STATE EX REL. BREEN, RELATOR, v. TOOLE, GOVERNOR,
RESPONDENT.

(No. 2,131.)

(Submitted January 7, 1905. Decided February 2, 1905.)

*Mandamus—Certificate of Election— Issuance—Affidavit—In-
sufficiency—Presumptions—Judicial Notice.*

*Mandamus*—Governor—Certificate of Election—Affidavit—Insufficiency.
   1.  An affidavit on application for writ of *mandamus* to the governor

to issue a certificate of election to relator as one of the judges of a certain district held insufficient, where it merely alleged that the law provides for three judges in such district, that at the election there were six candidates, and that the relator, as one of the candidates, received the third highest number of votes, the court taking judicial notice of the fact that the governor's proclamation called for the election of two judges only in such district, and that three political party organizations had tickets in the field seeking the suffrages of the people for their respective candidates.  Under such circumstances the presumption will not be indulged that the electors voted for more than two candidates for judgeships.

*Mandamus*—What Relator must Show.
2.  To warrant the issuance of *mandamus*, relator must show, among other things, a clear legal right in himself to have a particular act or duty performed by the defendant.

*Mandamus*—When Writ may be Invoked.
3.  The right sought to be protected by *mandamus* must be a substantial one, and the writ may not be invoked to determine questions in which relator has no personal or pecuniary interest, or where its issuance will be futile.

*Mandamus*—Affidavit—Contents—Inference—Speculation.
4.  The affidavit on which an application for *mandamus* is based must set forth clearly and succinctly the facts furnishing the foundation for the relief sought, leaving nothing to inference or speculation.

Supreme Court—Judicial Notice—Proclamation of Governor—Political History of State.
5.  Under Code of Civil Procedure, section 3150, the court will take judicial notice of the contents of the proclamation of the governor calling an election, and of the political history of the state.

Elections—Canvassing Officers—Powers.
6.  *Obiter:* The powers of canvassing officers are neither judicial nor quasi judicial, their sole duty being to ascertain and declare the result of the election.

*Mandamus*—Elections—Canvassing Officers—Evidence.
7.  *Obiter:* Courts in *mandamus* proceedings to compel the performance of the ministerial duties of canvassing officers cannot hear evidence touching the regularity or legality of any election and decide controversies touching these matters.

General Elections—Validity—Notice.
8.  *Obiter:* To render a general election valid, the formalities of notice, etc., are not necessary.

Special Elections—Vacancies—Notice.
9.  *Obiter:* It is only when special elections are held to fill vacancies that the technicality of notice is essential.

*Mandamus* proceedings on the relation of Peter Breen against Joseph K. Toole, Governor.   Dismissed.

*Mr. T. J. Walsh, Mr. J. E. Healy, Mr. J. B. Roote* and *Mr. J. E. Davies,* for Relator.

*Mr. William Wallace, Jr., Mr. H. G. McIntire, Mr. C. B. Nolan, Mr. James Donovan* and *Mr. Alex. Mackel,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for writ of *mandamus.*    The affidavit on which the application is based states substantially the following: That under section 32 of the Code of Civil Procedure, as amended by an Act of the legislative assembly approved March 11, 1901 (Laws 1901, p. 156), it is provided that there must be a district judge in each judicial district of the state, who must be elected by the qualified voters of the district; that his term of office shall be four years; and that it is further provided that in the first district there must be two judges, and in the second district three.    It is then averred that on May 4, 1901, the governor of the state of Montana appointed John B. McClernan an additional judge for the second district, to make up the number provided by statute; that at the general election held in November, 1902, the said John B. McClernan was duly elected by the electors of Silver Bow county, constituting said judicial district, as his own successor, and that by virtue of his appointment and subsequent election he has continued to discharge the functions of one of the judges for that district; that at the general election held in the state of Montana on the 8th day of November, 1904, there were six candidates for the office of judge in that district voted for by the voters, namely, George M. Bourquin, Michael Donlan, Peter Breen, the relator, Lewis P. Forestell, G. J. Langford and Charles Kohl; that the returns of said election so held in the county of Silver Bow had been duly made by the judges and clerks of election of the various voting precincts in said county to the board of county canvassers, and that the same were duly canvassed by that board; that it was therefrom determined that George M. Bourquin had received for the office of judge of the second judicial district 6,753 votes; Michael Donlan, 6,502 votes; Peter Breen,

5,594 votes; Lewis P. Forestell, 5,498 votes; G. J. Langford, 1,097 votes, and Charles Kohl 928 votes, no other person receiving any votes for such office; that thereupon the clerk of the board of county canvassers, having entered upon the records of said board a statement of the results of election as ascertained by the board, made a certified copy of so much thereof as related to the votes given for persons voted for for state and judicial officers, and duly transmitted the same to the Secretary of the State of Montana; that this statement shows that the persons last above mentioned each received for the office of judge of the second judicial district the number of votes which it is averred the board of county commissioners determined from the returns he had received; that thereafter, and on the 5th day of December, 1904, the board of canvassers of the state of Montana met to compute and determine, from the statement of the votes from counties for state and judicial officers, the votes received by the various candidates for said offices; that thereafter, at an adjourned session of the board held on the 7th of December, 1904, it determined from the returns so transmitted from the county of Silver Bow that the six candidates above mentioned for the judgeship in Silver Bow county had received respectively the number of votes declared by the county board of canvassers; that thereupon the Secretary of the State of Montana made out and filed in his office a statement of such determination of the votes cast for the various state and judicial officers as they appeared from the returns transmitted from the clerks of the various counties, including the vote for the office of judges of the second judicial district, and transmitted a copy of the same to the governor of the state of Montana; that thereupon the relator demanded of the governor, the defendant herein, that he, as such governor, issue to the relator a commission as judge of the second judicial district, but that the defendant refused, and still refuses, to issue such commission, or any commission at all; that the relator is by birth a citizen of the United States, forty-four years of age, residing in the county of Silver Bow; and that prior to the 1st day of January, 1900, he was admitted to practice law in all the courts of the state of

Montana.     There are stated reasons why this court should as-
sume original jurisdiction of the controversy and grant relief.

At the hearing the defendant, by motion to quash the alter-
native writ, challenged the sufficiency of the facts to warrant
the relief demanded.     The motion was overruled *pro forma,*
and an answer required.     Thereupon evidence was heard and
the cause submitted.

Are these facts sufficient to warrant the issuance of the writ?
When the governor issued his proclamation giving notice of the
general election to be held on November 8, 1904, under the re-
quirements of sections 1160 and 1161 of the Political Code, he
omitted therefrom all mention of an election of a third judge
for the second judicial district, calling for the election of only
two; this omission being made upon the assumption, no doubt,
that the term for which John B. McClernan had been elected
in 1902 was four years, and that there should be no election
for the third judgeship in that district at the general election
of last year.     Of this action of the executive department of the
state government, as well as the political history of the state,
this court must take judicial notice.     (Code of Civil Proc., sec.
3150.)     The facts stated in the affidavit must be considered in
the light of this knowledge, and their sufficiency determined ac-
cordingly.     The conclusion thus reached will determine whether
the relator is entitled *prima facie* to the relief demanded.

It is argued by counsel for relator that under the sections of
the Constitution and the statute creating the office of district
judge, fixing the term thereof, and providing for the filling of
any vacancy therein (Const., Art. VIII, secs. 12, 13, 14, 18,
26, 34; Code of Civil Proc., sec. 35), John B. McClernan was
elected in 1902 to serve the remainder of an unexpired term
created by the amendment to section 32 of the Code of Civil
Procedure, his appointment by the governor in May, 1901, hav-
ing been to fill a vacancy until the next general election there-
after, and that his successor should have been elected in Novem-
ber, 1904.     This contention is based upon a construction given
the sections of the Constitution, *supra,* to the effect that the
terms of district judges, both of those first provided for in sec-
tion 12, as well as those subsequently provided for under sec-

tion 14, are intended to be uniform; in other words, no matter when a new judgeship is created, its term expires on the same date on which all other current terms expire. Assuming this to be so, it must follow, it is said, that since it appears that six candidates for judgeships were voted for in the second district, the three of them appearing to have received the highest number of votes were elected to the three offices provided for by the statute, although the proclamation of the governor called for the election of only two. This position also involves the assumption that the people disregarded the proclamation, and actually voted for candidates for the three offices, of whom the relator was one. This must be so, counsel say, or it must follow that the governor may go behind the returns in any case, and determine for himself whether a particular candidate has been elected, before he will issue his certificate—a thing which he may not be permitted to do under any circumstances.

On the part of the defendant the contention is that there is not alleged any fact to show that there was a candidate for the third office, or that the voters actually voted for one, and that, such being the case, there is no presumption that they did so. The contention is also made that under the provisions of the Constitution cited John B. McClernan was in 1902 elected for a term of four years, and that therefore his successor was not to be elected at the election last year.

Under the view we take of this case, we do not think it necessary to determine whether the Constitution requires uniformity in the terms of office of district judges, and hence whether a third judge should have been elected in Silver Bow county. For present purposes this may be conceded, and still we are of the opinion that the relator is not entitled to any relief.

We agree with counsel for relator that under the law in this state the powers of canvassing officers are neither judicial nor quasi judicial; that they have no means given to them to inquire, nor any power to inquire, beyond the returns of the local election boards; and that their sole duty is to ascertain and declare the result. They cannot hear evidence touching the regularity or legality of any election, and decide controversies

touching these matters. Nor may the courts, in *mandamus* proceedings to compel the performance of the ministerial duties of these officers, make such inquiry. (*State ex rel. Leech v. Board of Canvassers of Choteau County,* 13 Mont. 23, 31 Pac. 879; *Pigott* v. *Board of County Canvassers of Cascade County,* 12 Mont. 537, 31 Pac. 536; *Chumasero* v. *Potts,* 2 Mont. 242.) The only question to be determined is: Have they performed their duty, and, if not, does the relator, from his own statement, clearly show that he is entitled to have them perform it?

It will be noticed that it is not specifically alleged in the affidavit that candidates were actually voted for for all the three offices which might be filled by the people. At most, a knowledge of this fact must be gained, if at all, by inference from the averment that six candidates were actually voted for. From this statement it is sought to have the further legal inference drawn that the relator is entitled to one of the three offices, because the law declares that the candidate having the highest number of legal votes must be declared elected. (Const., Art. IX, sec. 13.)

Two prerequisites must exist to warrant the issuance of *mandamus,* to wit: First, the relator must show a clear, legal right in himself to have a particular act or a duty performed by the defendant; and, second, it must appear that the law affords no other adequate remedy. (High on Extraordinary Legal Remedies, secs. 9, 10; *State ex rel. Beach* v. *District Court,* 29 Mont. 268, 74 Pac. 498, and cases cited.) The right sought to be protected must be a substantial one. The writ may not be invoked to determine questions in which the relator has no personal or pecuniary interest, nor when its issuance will be futile. (High on Extraordinary Legal Remedies, sec. 10.) It follows from these principles that the affidavit should set forth clearly and succinctly the facts furnishing the foundation for the relief sought, leaving nothing to inference or speculation; for the alternative writ must, either by actual recital or by appropriate reference to the affidavit, set forth the facts so distinctly that the defendant may admit or deny them, so

that an issue may be formed for trial.    (High on Extraordinary Legal Remedies, sec. 450.)

Tested by these rules, do the averments of the affidavit show that, notwithstanding the proclamation of the governor, the people of Silver Bow county elected, or undertook to elect, the relator to one of the three judgeships?   Must we indulge the presumption, without specific averment to support it, that the people exercised their supposed constitutional privilege of voting for candidates for the third judgeship, or that they pursued the course pointed out by the governor, and voted for two only?   What, if anything, is shown by the returns certified by the state canvassing board beyond the fact that there were six candidates, who each received the number of votes accredited to him, does not appear except by mere inference; and even the proper inference to be drawn is left in doubt and uncertainty. For the fact that six candidates were voted for, and that three of them received the highest number of votes, is just as consistent with the idea that the voters sought to fill only two of the judgeships as it is with the idea that they voted to fill the whole number; for we may not shut our eyes to another fact, which is a part of the political history of the state, that there were during the last political campaign at least three political party organizations in this state with tickets in the field, seeking the suffrages of the people for their respective candidates.   If each of these parties nominated candidates for two of the judgeships only in Silver Bow county, the result would be six candidates, and the returns would be relatively the same as appear in this case; for almost certainly three of them would have received relatively more votes than any one of the other three. In that case no one of them would be entitled to claim that he was elected to the third judgeship, for no one voted with the intention of choosing one of them for that office.

We must, in order to issue the writ, indulge the presumption that the people acted independently of the governor's proclamation, and elected, or at least undertook to elect, the relator.   This course might lead to absurd, not to say serious, results.   Suppose each of the political parties nominated a

candidate for each of two of the judgeships, the terms of which were understood to expire at the end of 1904, and that no candidate was nominated by any of them for the third one. Suppose, again, that the people did not vote at all for any candidate for this place (and it does not appear that they did), then the issuance of the writ would be a declaration that the relator is *prima facie* entitled to the third judgeship, and the result would be an assumption on the part of this court to act for the people of the second district and elect for them a district judge. The situation presented is anomalous, and not free from difficulty; but no reason has been suggested why the relator's case should be so far aided by presumption as to entitle him to be declared *prima facie* in position to demand a certificate of election from the governor.

We do not controvert the rule recognized by all the courts that the formalities of notice, etc., are not necessary to render a general election valid. The law gives notice to the people when general elections are to take place. The officers whose duty it is to give the notice directed by the statute may not, by the neglect to perform this duty, deprive the people of their constitutional or statutory right to elect their officers. It is only when special elections are held to fill vacancies that the technicality of notice is essential. The law does not give notice of the time when such elections shall occur.

Nor have we overlooked another rule, stated by Mr. High (Extraordinary Legal Remedies, sec. 11), that *mandamus* proceedings do not always necessarily determine the question of the ultimate right involved, and that the writ is frequently granted when it can only determine one step in the progress of inquiry—as where, in election cases, it is issued to the board of canvassers of election to compel them to canvass the votes cast and declare the result, though it would still be necessary to resort to *quo warranto,* or some other appropriate proceeding, to determine the ultimate question of right, and admit the relator into the office sought.

As stated above, the circumstances of this case are peculiar and anomalous, and, so far as we have been able to ascertain,

have never arisen in any of those jurisdictions which have adopted the rule that in *mandamus* proceedings the validity or regularity of an election will not be inquired into. We are satisfied, however, that upon the facts as presented in this case the relator is not entitled to relief.

It follows that the motion to quash the writ must be sustained, and the application dismissed.

*Dismissed.*

Mr. Justice Milburn and Mr. Justice Holloway concur.