STATE EX REL. MOORE, RELATOR, *v.* PATCH ET AL., RESPONDENTS.

(No. 5,241.)

(Submitted November 27, 1922. Decided November 28, 1922.)

[211 Pac. 202.]

*Mandamus—Elections—Board of County Canvassers—Refusal to Canvass Returns—Presumptions.*

Mandamus—Elections—Improper Refusal of Board of Canvassers to Canvass Returns—Presumptions.
1. Where a board of county canvassers refused to canvass election returns from a precinct on the ground that it appeared upon the face of the returns that the election had not been held at the place designated by the board of county commissioners, and on application for writ of mandate to compel them to act nothing was shown affirmatively by pleadings or otherwise that the judges of election at the precinct had not pursued the statute (sec. 551, Rev. Codes 1921), giving them authority to change the place of election upon two days' notice if for any reason it cannot be held at the place appointed, it will be presumed that official duty was regularly performed by them and that they did change it, and the writ will issue commanding action.

Same—Power of Board of Canvassers to Consider Evidence of Irregularities.
2. The board of county canvassers in canvassing election returns is without authority of law to consider any matter not appearing on the face of the returns, and therefore cannot justify its refusal to canvass the returns from a precinct on the ground that an elector had filed an affidavit showing irregularities at the holding of the election or illegality of votes cast.

Original application for *mandamus* by the State, on the relation of R. J. Moore, directed against R. E. Patch and others, constituting the Board of Canvassers of Roosevelt County. Writ granted.

*Messrs. Norris, Hurd & Rhoades,* for Relator; *Mr. George E. Hurd* argued the cause orally.

*Mr. George A. Bangs,* of the Bar of Fargo, North Dakota, *Mr. I. W. Choate* and *Mr. George E. Erickson,* for Respondents; *Mr. Bangs* and *Mr. Choate* argued the cause orally.

Compelling election officers to act after they have met and adjourned, see notes in Ann. Cas. 1912C, 1257; 36 L. R. A. (n. s.) 1089.

MR. CHIEF COMMISSIONER LEIPER and COMMIS-
SIONERS BORTON and FORD prepared the opinion for the
court.

This is an application to this court for the issuance of a
writ of mandate directed to the board of canvassers of Roose-
velt county, Montana, commanding the board to reconvene,
canvass and count the election returns from precincts Nos. 3,
28, and 31 in Roosevelt county; also directing such board to
duly declare the result of such canvass by showing the total
number of votes cast for each candidate for office, together
with the total number of votes cast for and the total number
of votes cast against each proposition submitted at the general
election held November 7, 1922.

The affidavit of the relator, Moore, discloses that he is a
resident of Roosevelt county, and in all respects a qualified
elector therein; that the defendants Patch and Leeson are
members of the board of county commissioners of Roosevelt
county; that the defendant Tidland is the county treasurer of
that county; that one Weinrich is a member of the board of
county commissioners of Roosevelt county, but that, owing to
his absence from the state at the time the canvassing board
met, defendant Tidland acted as a member of such canvassing
board; that on November 7, 1922, a general election was held
within Roosevelt county; that there then were within that
county thirty-seven election precincts; that at this election the
electors in the various precincts voted for divers and sundry
candidates for national, state and county officers, and for or
against various propositions submitted to the electors then to
be voted upon; that among other propositions submitted to
the electors of that county on November 7 was the matter of
naming the permanent county seat thereof, and that Poplar
and Wolf Point were each candidates therefor; that on No-
vember 17, 1922, the defendants met at the county seat of
Roosevelt county as a canvassing board; that during the can-
vass of the returns by the defendants, one Atkinson filed with
the board of canvassers a certain affidavit, in which the board

were asked not to canvass the election ·returns of precincts numbered 3, 28 and 31, from which affidavit it appears that as to precinct No. 3 the voting place therein had been established at the fire hall in such precinct, and that the election had been held at a place other than the fire hall; that as to precinct No. 28, the polling place had been designated as a certain store, whereas the election had been held at a schoolhouse a short distance from such store, but⁻it is alleged that no person was deprived of the right to vote by reason of the holding of the election within each of these precincts at a different place than that designated as the polling place, and as to precinct No. 31, such affidavit set forth that the polling place therein had been established at an Indian trader's store, namely, at the store of one Cogswell, at the town of Wolf Point, which is in the vicinity of an Indian subagency, but that it did not appear that anyone authorized to vote had been deprived of that right; that all of the members of the canvassing board concurred in the canvass then made of all of the election returns from thirty-four of the thirty-seven precincts in the county of Roosevelt, and that two of such canvassing board, namely, defendants Patch and Tidland, caused to be certified to the state board of canvassers of the state of Montana such returns from such thirty-four precincts, but refused to canvass the returns from precincts numbered 3, 28 and 31, and refused to certify the returns thereof to the state board of canvassers of the state of Montana, and that by reason thereof the returns so certified to the state board of canvassers of the state of Montana do not correctly show the number of votes cast for the various candidates in such county on either the national, state or county tickets, and do not correctly show the number of ballots cast· upon measures and questions submitted to the electors of such county. The affidavit further sets forth the number of votes cast for each candidate on the national, state and county ticket, and also for and against each of the various measures submitted at such election within precincts Nos. 3, 28 and 31. It is further alleged that at this election Wolf Point received for permanent county seat 2,002 votes, and

Poplar received 1,810 votes in the entire thirty-seven precincts within such county, but through the refusal of the canvassing board to consider the three precincts above noted it is made to appear that Poplar received a greater number of votes for permanent county seat than did Wolf Point, and that the several candidates for office received a less number of votes than were actually cast for each of them, and a like situation prevails as to the several other propositions submitted to the electors at that time.

The alternative writ issued, and the respondents on the day upon which they were directed to appear and show cause filed a motion to strike from the affidavit certain parts thereof, and on the same day filed an answer to the alternative writ, to which answer the relator filed a motion to strike certain portions thereof, and at the same time filed his reply thereto.

The answer admits that the defendants refused to canvass the election returns from precincts Nos. 3, 28 and 31 of Roosevelt county, and sets forth as the reason for such refusal as to precinct No. 3, that the place duly designated for holding such election was the fire hall in precinct No. 3, but that the election returns from that precinct showed on their face that the election had actually been held at a place other than the fire hall, and at a building known and designated as "Motor Mart," which was located a short distance from the fire hall. The reason for the refusal to canvass the election returns from precinct No. 28, as alleged by the answer, is that in this precinct the place designated at which such election should be held was a certain store, but that the election returns showed on their face that the election had been held at a schoolhouse, which schoolhouse was some distance from the store above mentioned. And the reasons alleged in the answer for the refusal to canvass the returns from precinct No. 31 are that the place designated for holding the election within this precinct was at one Cogswell's store; that Cogswell's store is an Indian trading-post, situated upon the Fort Peck Indian Agency; that all of the votes cast within this precinct were cast at this Indian trading-post within this Indian agency, contrary to the

laws of the state of Montana; that this appeared from the face of the returns and from the files and records of the board of county commissioners of Roosevelt county; further, that one Atkinson, who is a taxpayer and elector in this county, filed a written protest with the canvassing board, protesting against the board canvassing any of the election returns from any of these three precincts.

It is further alleged in connection with precinct No. 31 that the writ of mandate should not issue by reason of certain facts therein set forth as having come to the knowledge of the defendants since the refusal to canvass the election returns from this precinct, in which it is charged that many votes were cast in this precinct by persons not qualified to vote at this election. Certain misconduct of one of the judges of election is charged. It is further charged that in and about this polling place on the day of election were many persons who actively solicited votes in behalf of Wolf Point as the permanent county seat; that the judges of election refused to entertain challenges to voters who were not qualified to vote, and that certain persons actually did vote who were then not qualified to vote.

A subpoena *duces tecum* had been issued, requiring the county clerk and recorder of Roosevelt county to attend on the day of the hearing hereof, and to have with him all of the election returns from the three precincts in question. In obedience to such subpoena the county clerk appeared with such election returns, consisting of six large envelopes and three "returns," so called. It was stipulated by the respective counsel in open court that these election returns which were produced in court were the returns from the three precincts in question.

Keeping in mind that these six envelopes were duly sealed, the seals unbroken, and the envelopes unopened, the canvassing board thus had before it, as shown by the face of the returns, from each of these three precincts in question, the following:

### Precinct No. 3.

Two large envelopes, each bearing the name and address of the county clerk and recorder of Roosevelt county. On one of

these envelopes there was written and printed the following: "General Election, Held November 7, 1922, Precinct No. 3, Poll Books." On the other there was written and printed the following: "Tally Books of an Election Held in Ward 2, Bainville, Precinct No. 3, Rocsevelt County, Montana, on the 7th day of November, 1922." On the "return," so called, there is the following:

"Returns.

"One of these must be posted outside of the polling place, there to remain for ten days.

"We, the undersigned judges and clerks at the general election held in Bainville polling place, in ward 2, precinct No. 3, hereby certify that at the above general election and polling place each of the following named persons received the number of votes for election to the office specified as below set forth."

Then follows the name of each candidate, together with the number of votes cast for each candidate; and also a designation of each proposition submitted, together with the number of votes cast for each of such propositions and the number of votes cast against each thereof.

Precinct No. 28.

Two large envelopes, each bearing the name and address of the county clerk and recorder of Roosevelt county. On one of these envelopes there was written and printed the following:

"General Election, Held November 7, 1922, Precinct No. 28, Poll Books."

On the other there was written and printed the following:

"Tally Books of an Election Held in Volt Precinct No. 28, Roosevelt County, Montana, on the 7th day of November, 1922."

On the "return" so-called there is the following:

"Returns.

"One of these must be posted outside of the polling place, there to remain for ten days.

"We, the undersigned judges and clerks at the general election held in the Volt polling place, in schoolhouse precinct No. 28, hereby certify that at the above general election and

polling place each of the following named persons received the number of votes for election to the office specified as below set forth.''

Then follows the name of each candidate, together with the number of votes cast for each candidate, and also a designation of each proposition submitted, together with the number of votes cast for each of such propositions and the number of votes cast against each thereof.

### Precinct No. 31.

Two large envelopes, each bearing the name and address of the county clerk and recorder of Roosevelt county. On one of these envelopes there was written and printed the following:

''General Election, Held November 7, 1922, Precinct No. 31, Poll Books.''

On the other there was written and printed the following:

''Tally Books of an Election Held in Wolf Point, Precinct No. 31, Roosevelt County, Montana, on the 7th day of November, 1922.''

On the ''return,'' so called, there is the following:

### ''Returns.

''One of these must be posted outside of the polling place, there to remain for ten days.

''We, the undersigned judges and clerks at the general election held in S. T. Cogswell's store polling place, in precinct No. 31, hereby certify that at the above general election and polling place each of the following named persons received the number of votes for election to the office specified as below set forth.''

Then follows the name of each candidate, together with the number of votes cast for each candidate, and also a designation of each proposition submitted, together with the number of votes cast for each of such propositions and the number of votes cast against each thereof.

An examination of the face of these election returns reveals [1] that as to precincts numbered 3 and 31, no irregularity whatsoever appears. From the returns of precinct No. 28, it appears that the voting place was actually had at a school-

house, whereas the records of the board of county commissioners show that the place designated was a postoffice, but under the provisions of section 551 of the Revised Codes of 1921 it is provided: ''If the board fails to designate the house or place for holding the election, or if it cannot be held at the house or place designated, the judges of election, or a majority of those acting as such in the precinct must, two days before the election and by order, under their hand (copies of which they must at once post in three public places in the precinct), designate the house or place.'' Also under the provisions of subdivisions 15 and 33 of section 10606 of the Revised Codes of 1921, it is to be presumed: ''15. That official duty has been regularly performed,'' and ''33. That the law has been obeyed.''

There being no affirmative allegations in the pleadings and nothing before this court from which it affirmatively appears, or from which it may be inferred, that the provisions of section 551 were not complied with, we must indulge the presumptions above noted, and conclude that such notice was posted. Therefore no irregularity whatsoever appears from the face of these returns, which the canvassing board had before it.

But it is urged that certain affidavits were filed and certain [2] other evidence produced before the canvassing board. The board of canvassers is without any authority under the law to consider any matter except that which appears upon the face of the returns. This is the law in this jurisdiction, as laid down by Mr. Chief Justice Brantly in the case of *State ex rel. Breen* v. *Toole,* reported in 32 Mont. 4, 79 Pac. 403, in which it is said: ''We agree with counsel for relator that under the law in this state the powers of canvassing officers are neither judicial nor *quasi*-judicial; that they have no means given to them to inquire, nor any power to inquire, beyond the returns of the local election boards; and that their sole duty is to ascertain and declare the result. They cannot hear evidence touching the regularity or legality of any election, and decide controversies touching these matters. Nor may the courts, in *mandamus* proceedings to compel the performance of the min-

isterial duties of these officers, make such inquiry. (*State ex rel. Leech* v. *Board of Canvassers of Chouteau County,* 13 Mont. 23, 31 Pac. 879; *Pigott* v. *Board of County Canvassers of Cascade County,* 12 Mont. 537, 31 Pac. 536; *Chumasero* v. *Potts,* 2 Mont. 242.) The only question to be determined is: Have they performed their duty, and, if not, does the relator, from his own statement, clearly show that he is entitled to have them perform it?" (*Poe* v. *Sheridan County,* 52 Mont. 279, 157 Pac. 185.)

It follows that the peremptory writ of mandate will issue herein, requiring the defendants, and each of them, to reconvene and reassemble as a canvassing board, on or before Saturday, the second day of December, 1922, at the hour of 10 o'clock A. M., and canvass the returns of precincts numbered 3, 28 and 31 of Roosevelt county, Montana, and then and there declare the result of such canvass, give full force and effect thereto, and then and there do all things required of them, and each of them, as such canvassing board. It is therefore recommended that the writ issue.

PER CURIAM: For the reasons given in the foregoing opinion, let the writ issue, as recommended.

*Writ issued.*