STATE EX REL. LYNCH, RELATOR, v. BATANI ET AL., RESPONDENTS.

(No. 7,645.)

(Submitted November 10, 1936. Decided November 19, 1936.)

[62 Pac. (2d) 565.]

*Messrs. McCaffery & McCaffery,* for Relator; *Mr. Joseph J. McCaffery* argued the cause orally.

*Mr. P. E. Geagan, Mr. Timothy F. Nolan, Mr. Harry J. Freebourn* and *Mr. Clarence Hanley,* for Respondents; *Messrs. Geagan, Nolan* and *Hanley* argued the cause orally.

Opinion: PER CURIAM.

Relator brought this proceeding seeking a writ of mandate against the respondents as a board of county canvassers for Silver Bow county. The respondents filed a motion to quash the alternative writ which was by this court denied. Thereupon the respondents answered and the relator demurred to the affirmative defense appearing therein, which demurrer was sustained. Thereupon testimony was received in support of relator's petition. The respondents were afforded an opportunity to offer testimony and declined to offer any additional testimony. This court thereupon took the matter under advisement and has rendered a judgment awarding the relator a peremptory writ of mandate in accordance with the prayer of the petition. Owing to the necessity for prompt action, no opinion has heretofore been filed, and accordingly this opinion

is prepared and filed setting forth our reasons for these various rulings.

Relator in his petition alleged that for many years he has been a citizen of the United States and a taxpayer in Silver Bow county; that at the general election held there on November 3, 1936, he, together with T. E. Downey, Frank L. Riley, and Henry A. Tyvand, were candidates for the office of judge of the district court of the second judicial district; that in election precinct No. 11 of that county at the polling place thereof the judges of election did on November 3, 1936, canvass the votes for these candidates for district judge and counted and ascertained the number of votes cast for each of these candidates; that two clerks of election in the precinct by tallies made on tally sheets correctly reported the number of votes cast for these candidates as counted and determined by the judges of election; that the tally sheets as kept by the clerks and delivered by the judges of election to the county clerk show that relator received in that precinct 183 votes, that T. E. Downey received 286 votes, that Frank L. Riley received 149 votes, and that Henry A. Tyvand received 179 votes; that the respondents are the board of canvassers for Silver Bow county, and on November 5, 1936, met as such and proceeded to canvass the returns from each precinct in the county, including precinct No. 11; that in canvassing the returns from this precinct the board wrongfully, arbitrarily, and in disregard of the tally sheets of the precinct determined and found that relator received 195 votes, T. E. Downey 326, Frank L. Riley 197, and Henry A. Tyvand 184 for the office of district judge, and directed the clerk to enter this result on the records of the board; and that the relator is 65 years of age, a long-time resident of the state, admitted to practice law, and an attorney in good standing before all the courts.

Relator alleges that by reason of this arbitrary and wrongful conduct of the respondents he has been compelled to employ an attorney in this proceeding and is entitled to a reasonable attorney fee as damages to be allowed herein; that this

court should assume jurisdiction for the reason that a question of great public concern is involved; that the purity of elections is at stake; and that institution of a proceeding in the district court would result in great delay.

The motion to quash states various grounds, but they may be summarized as follows: (1) That this court is without jurisdiction to hear the proceeding; (2) that the petition does not state facts sufficient to constitute a cause of action for a writ of mandate or otherwise; and (3) that the relator has an adequate remedy at law.

This court has jurisdiction of this cause as is settled by a long line of authorities which are collected and followed in the case of *State ex rel. Nagle* v. *Kelsey,* 102 Mont. 8, 55 Pac. (2d) 685. (See, also, *State ex rel. Leech* v. *Board of Canvassers of Choteau County,* 13 Mont. 23, 31 Pac. 879.)

It is contended by counsel for the respondents that the petition was insufficient, in that it failed to disclose that relator was injured or damaged by the acts complained of. It appears from the petition that if relator received all of the votes for which he contended he is entitled to, nevertheless he would still have an insufficient number of votes to enable him to be a successful candidate for either of the two offices of district judge to be filled in Silver Bow county. In other words, his petition fails to disclose any greater interest in relator than existed in any other taxpaying elector of that county.

In High on Extraordinary Remedies, third edition, section 11, it is said: "It is worthy of note that proceedings in mandamus do not always or necessarily determine the questions of ultimate right involved, and the writ is frequently granted when it can only determine one step in the progress of inquiry, and when it cannot finally settle or determine the controversy. A familiar illustration of this may be found in cases of mandamus to canvassers of elections, to compel them to canvass the votes cast and to declare the result accordingly, where it may still be necessary to resort to proceedings in quo warranto to

determine the ultimate questions of right and to procure admission to the office.''

In McCrary on Elections, fourth edition, 290, it is declared: ''And, inasmuch as canvassing and returning officers act ministerially and have no power to go behind the returns, or inquire into the legality of votes cast and returned, a court will by mandamus compel them to declare and certify the result *as shown by the returns,* because that is their plain duty.''

In the case of *State ex rel. Rice* v. *County Judge,* 7 Iowa, 186, the court said: ''The proceeding under the writ of mandamus, does not, in all cases, determine the ultimate right. Thus, it has been applied, where it could determine but one step in the progress of inquiry, and when it could not finally settle the controversy, but it might still be necessary to resort to quo warranto, an injunction, or a contest of election under the statute.''

On the face of relator's petition it is disclosed that the respondent board has failed to perform a duty, and accordingly, under the foregoing authorities, he is entitled to the relief demanded if his allegations be sustained by proof, as in a proceeding where a public right is involved any citizen may be relator. (*Garry* v. *Martin,* 70 Mont. 587, 227 Pac. 573, 574.) In that case this court said: ''Moreover, speaking generally, where the subject-matter of the suit affects the public, where the object of the writ is to compel the proper execution of the laws and to confine tribunals within their rightful jurisdiction—or to prevent a clear transgression of their authority—any citizen of the state, county or municipality affected may maintain the action. This court has so held consistently from its earliest days to the present time.''

The remedies suggested which would afford relief are the ▮▮ ordinary election contest and also a proceeding under the provisions of Chapter 27, Laws of 1935. This latter statute has for its object and purpose the securing of a recount of the votes in one or more precincts where it is alleged the votes have not been properly counted. Here no allegations are made

charging the election judges with improperly counting the ballots, and hence Chapter 27 would afford relator no relief. An election contest would at best result in much greater delay, and any proceeding which results in delay is not as adequate as one which is more expeditious. For these reasons we denied the motion to quash.

The further and separate answer, to which a demurrer was sustained, set forth sufficient facts, if true, to demonstrate the fact that relator would not have received sufficient votes even if granted relief in accordance with the prayer of his petition to enable him to be a successful candidate. The allegations of the affirmative answer and the demurrer thereto raised the same question discussed supra in connection with the motion to quash, and accordingly, for the same reasons there expressed, we sustained the demurrer.

The county clerk of Silver Bow county was called as a witness and produced a ballot-box, sealed and locked, containing the ballots, the poll-books, and the tally sheets used in the election in precinct No. 11. Under order of this court, and in its presence, he opened the ballot-box and removed therefrom the poll-books and tally sheets, which were offered and received in evidence over objection. The poll-books contained nothing but the names of the electors who voted at the election. In the space provided for receiving the totals of the votes received by the various candidates at the election, no entries were made with respect to these judicial candidates, or any other. The tally sheets disclosed the tallies had been entered in appropriate spaces provided, following the names of these judicial candidates, and in an appropriate column there appeared the total, set opposite the respective names, which relator contends are correct. To the left of these totals appear others substantially the same, but slightly at variance with those found by the canvassing board. A line is drawn across each series of figures in the second column. Various of the tallies at the end of each line of tallies opposite each name of the candidate have numerous lines drawn across them, to

the end that the tallies in each tally block of five represents, excluding the marked out tallies, correspond with the final totals appearing in the second column of totals, that is, the ones which were not lined out. The county clerk, as well as the two clerks of election who kept these tally sheets, testified that they were in the same condition as when received by the county clerk, in one instance, and delivered to him in the other.

One of the judges and the two clerks of election testified, over objection, as to how it happened that some tallies were lined out and also the totals changed. It was testified by these witnesses that there were found in the ballot-box 51 ballots which did not contain, on the back thereof, the precinct stamp of precinct No. 11. One of the witnesses testified as to why and how this change was made, as follows: ''When we first went in to open the ballots, one of the judges found a ballot with 17 ballots wrapped up in one big ballot. These ballots were all in one; so we did not count them. So they started in tallying—the judges called. I took them down. When the judges tallying them—while we are tallying, some more judges counted them. And there was in the ballot box—in the box there was 536 ballots, and there was only 485 voters in our precinct. After we had them all tallied, they had to go through the 51 ballots again and take off these here. You will notice there is—there was 45 taken off of Downey, 2 off of Lynch, and 44 off of Riley, and 2 off of Tyvand. That is how we happened to do that.''

The admission of the testimony mentioned in the above ■ paragraph was improper, and accordingly it has not been considered by us in arriving at this opinion. Such is the rule declared by this court in the case of *State ex rel. Moore* v. *Patch*, 65 Mont. 218, 211 Pac. 202, 204, wherein it was said: ''The board of canvassers is without any authority under the law to consider any matter except that which appears upon the face of the returns. This is the law in this jurisdiction, as laid down by Mr. Chief Justice Brantly in the case

of *State ex rel. Breen* v. *Toole,* reported in 32 Mont. 4, 79 Pac. 403, in which it is said: 'We agree with counsel for relator that under the law in this state the powers of canvassing officers are neither judicial nor quasi judicial; that they have no means given to them to inquire, nor any power to inquire, beyond the returns of the local election boards; and that their sole duty is to ascertain and declare the result. They cannot hear evidence touching the regularity or legality of any election, and decide controversies touching these matters. Nor may the courts, in mandamus proceedings to compel the performance of the ministerial duties of these officers, make such inquiry.' '' (Citing cases.)

The tally sheets are under our law the primary evidence of the count of the votes. (*Dubie* v. *Batani,* 97 Mont. 468, 37 Pac. (2d) 662.) The law contemplates that the election board in the precinct will return to the clerk and recorder but one tally sheet and one copy of the poll-book. (Sec. 782, Rev. Codes; *Dubie* v. *Batani,* supra.)

One of the tally sheets mentioned supra is nicely kept and the tallies therein clearly indicate the same number of tallies as are indicated by the corrected totals of this sheet. The other is not so well kept, and in a few blocks of tallies, which are designed to include five tallies, a less number of tallies appears than the five; however, the corrected totals in that tally sheet are identical with those in the other. The better kept tally sheet, as above observed, clearly indicates that the return of the election board was for the figures appearing in the totals on the two tally sheets. The respondent board, as we understand the testimony of the county clerk, attempted to count the tallies in the poorer kept tally sheet, including those which manifestly have been lined out, and declared the result accordingly. An examination of these tally sheets clearly reveals that the return of the precinct as made by the judges and clerks of election shows the totals for which relator contends.

We think what the court said in the similar case of *Capper* v. *Anderson*, 88 Kan. 385, 128 Pac. 207, is applicable here. There it was recorded: "A canvassing board, in ascertaining and registering the effect of the returns, acts in a purely ministerial capacity, and is subject to control by mandamus. (15 Cyc. 384; 26 Cyc. 277.) The power to compel a canvass implies the power to compel a correct one. A ministerial duty wrongly performed is not performed at all. The correction of an erroneous computation can, of course, be compelled by a court. The mistakes here complained of are substantially of that character. They consist of treating the face of the poll books and tally sheets as indicating a result which a proper consideration of the entire document shows beyond question to be wrong. Whatever might be the rule in a situation admitting of a substantial difference of opinion, when a court can determine with certainty that the poll books and tally sheets show a certain number of votes to have been cast and counted for a particular candidate, it can require a board of canvassers to give proper effect to that determination."

The respondents in this case failed to perform a ministerial duty and, accordingly, we entered judgment awarding the relator a peremptory writ in consonance with the prayer of his petition.

After entry of judgment, respondents moved for a new trial, following the procedure outlined in the Codes with reference to such proceedings in the district court. The motion came on for hearing. At the beginning thereof counsel for relator objected, challenging the propriety of such procedure and asserting that a motion for a rehearing was the only proper method for review of a judgment entered in an original proceeding in this court.

With reference to proceedings for mandate, section 9855, Revised Codes, provides that the motion for a new trial must be made in the court in which the issue of fact is tried. Section 9853 provides for the trial in mandamus proceedings of

questions of fact in the supreme court and for the selection of a jury, if one is desired. California has this identical section (sec. 1092, Code Civ. Proc.). The early California cases held that a motion for a new trial is the proper proceeding in this type of proceedings, as distinguished from a petition for rehearing. (*People ex rel. Central Pac. R. Co.* v. *Coon,* 25 Cal. 635, 653; *People ex rel. Thompson* v. *Holloway,* 41 Cal. 409.) In its identical form this section was first incorporated as a part of our statutory law in 1877, as section 555, page 183 (Session Laws of 1877). At the time we adopted this statute, presumably from California, both of the California decisions cited supra had theretofore been rendered. Subsequently, and long after our adoption of the statute, the California court, in view of the constitutional provision adopted after its previous decisions—the like of which does not appear in the Montana Constitution—held that a petition for a rehearing was the proper procedure. (*Grangers' Bank of California* v. *Superior Court,* 101 Cal. 198, 35 Pac. 642; *In re Philbrook,* 108 Cal. 14, 40 Pac. 1061.) The early California decisions announced the correct rule as applied to our statutes and Constitution. To hold otherwise would be to disregard the plain, unambiguous statutory provision. Accordingly, the objection is overruled.

In the argument on the motion it was asserted that the ▮▮▮ petition for the writ was insufficient, in that it did not appear from the facts stated therein that all of the various statutory steps, beginning with the canvass of the vote by the election judges and leading up to the delivery of the returns from precinct No. 11 to the county board of canvassers, had been followed. True, not all of the steps are affirmatively alleged to have been followed by the various officials having to do with the canvass and delivery of the returns from precinct No. 11; sufficient facts, however, are alleged upon which the following presumptions may be invoked: That official duty has been regularly performed (subd. 15, sec. 10606, Rev. Codes), and that the law has been obeyed (subd. 33, Id.).

364

When we call to our aid these presumptions, the facts appear which show at least prima facie that all these various statutory steps have been followed. The evidence adduced on the hearing did not dispute these presumptions in any respect, except as noted in our previous discussion. We think the petition sufficient as against this attack.

It was argued that we were in error in entering judgment for attorney fees as damages. As we understand this contention, it is conceded that attorney fees may properly be recovered in a mandamus proceeding as damages, and that the court may determine the reasonableness of a fee, but that where, as here, relator alleged that it was necessary for him to employ attorneys and to claim his damages—which was denied by the answer—it was necessary for proof to be made of the services rendered.

In order for relator to recover damages in a mandamus proceeding, it is necessary for him to assert or prove his claim for such damages in such proceeding. (*State ex rel. Golden Valley County* v. *District Court*, 75 Mont. 122, 242 Pac. 421.) In a proceeding for the foreclosure of a mortgage, where the statute provides for attorney fees, as, with reference to mandamus proceedings does our statute as interpreted by this court (sec. 9858, Rev. Codes; *State ex rel. Shea* v. *Cocking*, 66 Mont. 169, 213 Pac. 594, 28 A. L. R. 772), and where the parties by their contract provided for attorney fees, we have held that the court had the power to fix and allow a reasonable attorney fee without the reception of evidence respecting the same. (*Bohan* v. *Harris*, 71 Mont. 495, 230 Pac. 586.) While the court in such a proceeding may secure the aid of expert testimony, it is not bound to follow it when such testimony is received. (Id.) Here counsel signed the petition and appeared on behalf of the relator throughout the entire course of this proceeding; he performed much of his labor in the presence of this court; the pleadings also evidence it. For us to hold, before we could find that some service has been performed, that relator should have proved all the ser-

vice rendered by his counsel, would be to insist on an idle act not required by law. (Sec. 8761, Rev. Codes.)

On the motion for new trial counsel argued other questions which have been discussed supra, in connection with the motion to quash and the consideration of the case on its merits.

The motion for new trial is denied, and a peremptory writ of mandate, in accordance with the judgment heretofore rendered, is ordered issued forthwith.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the cause and takes no part in the foregoing decision.