## The People of the State of Illinois by Maclay Hoyne, State's Attorney, ex rel. Ida L. M. Fursman, Appellees, v. City of Chicago et al. Board of Education of the City of Chicago et al., Appellants.

### Gen. No. 22,236.

1. INJUNCTION, § 173*—*when parties complainant properly joined.* On a bill by the People by the State's Attorney on the relation of a tax payer and voter of a city to enjoin the enforcement of a rule of the board of education of the city prohibiting teachers in the public schools from belonging to certain societies or unions, parties complainant *held* properly joined.

2. STATE'S ATTORNEY, § 5*—*when bill maintainable by where disbursement of public school money affected.* Under J. & A. ¶ 616, the State's Attorney is required to commence and prosecute a suit which involves the disbursement of money by the public schools.

3. INJUNCTION, § 173*—*when taxpayer may maintain bill.* A taxpayer of a city may maintain a bill to enjoin the enforcement of a rule of the board of education of such city involving the disbursement of its public school funds.

4. INJUNCTION, § 191*—*when bill not prematurely brought.* A bill by the State's Attorney on the relation of a taxpayer of a city to enjoin the enforcement of a rule of the board of education of such city prohibiting the teachers from belonging to certain unions and societies under the penalty of dismissal is not prematurely brought though no teacher has been discharged, where the bill alleges that the board is preparing to send out notices requiring compliance with the rule, is spending money and threatening further to enforce the rule.

5. SCHOOLS AND SCHOOL DISTRICTS, § 104*—*what extent of power of board of education to pass rules governing teachers.* While the board of education of a city has power to pass rules regulating the teaching force, it cannot pass an unreasonable rule in violation of the statutes or constitution of the State.

6. SCHOOLS AND SCHOOL DISTRICTS, § 104*—*when rule of board of education void.* A rule of the board of education of a city which restricts employment of teachers to such as are not members of certain organizations is void as discriminating between certain classes and conferring special privileges.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. Schools and school districts, § 104*—*when rule of board of education not valid as disciplinary measure.* A rule of the board of education of a city restricting employment to such teachers as are not members of certain unions or societies, and prohibiting membership in such unions or societies under the penalty of dismissal, cannot be sustained as a disciplinary measure.

Holdom, J., dissenting.

Interlocutory appeal from the Superior Court of Cook county; the Hon. Denis E. Sullivan, Judge, presiding. Heard in this court. Affirmed. Opinion filed May 1, 1916.

Angus Roy Shannon and Chauncey M. Millar, for appellants.

Maclay Hoyne, for appellees; I. T. Greenacre and Alice Greenacre, of counsel.

Mr. Presiding Justice McSurely delivered the opinion of the court.

This is an appeal from an order denying a motion to dissolve a preliminary injunction.

Appellees have made motions (1) to dismiss the appeal, or (2) to dismiss the appeal as to certain defendants in the bill. In view of the decision reached by a majority of this court upon the substantive question before us these motions are not material, and for that reason are denied.

The bill was filed by the State's Attorney of Cook county and joined in by Ida L. M. Fursman, a taxpayer and voter of the City of Chicago, praying for an injunction restraining the enforcement of a rule passed by the board of education prohibiting teachers from belonging to certain societies or unions. This rule of September 29, 1915, is as follows:

"Section 93-A — Membership in Organizations Affecting Discipline and Efficiency Prohibited.

"1. Membership by teachers in labor unions, or in organizations of teachers affiliated with a trade union, or a federation or association of trade unions, is inimi-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

cal to proper discipline, prejudicial to the efficiency of the teaching force, and detrimental to the welfare of the public school system; therefore, such membership or affiliation is hereby prohibited. Membership in some teachers' organizations which have officers, business agents or other representatives who are not members of the teaching force is inimical to proper discipline, prejudicial to the efficiency of the teaching force, and detrimental to the welfare of the public school system; therefore membership in such of said last mentioned organizations as this Board hereafter shall determine are inimical, prejudicial or detrimental as aforesaid is hereby prohibited.

"2.    All members of the Education Department who are now members of any such prohibited organizations shall forthwith discontinue their membership therein, and shall within three (3) months from the date of the adoption of this rule furnish satisfactory evidence that such membership has been discontinued.

"3.    No person shall be employed hereafter in any capacity in the Education Department until such person shall state in writing that he or she is not a member, and will not while employed in the Education Department become a member of any such prohibited organization.

"4.    No member of the Education Department shall be eligible hereafter for promotion, advancement in salary, or transfer from school to school until such person shall have stated in writing that he or she is not a member of any such prohibited organization.

"5.    Any member of the Education Department who shall be found guilty of violation of any provisions of this rule shall be liable to dismissal from the service, or to such lesser disciplining as this Board in its discretion in each case shall determine."

It is alleged by the bill that in accordance with a rule of the board of education, on June 23, 1915, the teachers were elected for the ensuing year in the regular manner, more than 7,000 in number, including the relator; that the teachers have been teaching in the public schools for a great many years, and a rule provided

that in the employment of teachers each year the board should give preference to those already employed if found satisfactory; that before this election on June 23, 1915, the board of education had found all of such teachers well qualified and competent, that such teachers had done and continued to do all things for the proper maintenance and discipline of the schools in accordance with the by-laws, rules and regulations governing the same as adopted by the board of education; that such teachers had done all things in accordance with their contract of employment, and they had not done anything, and had permitted nothing to be done, that was inimical to the proper discipline of the schools, and that they were still willing under their contract of employment to so continue their duties.

That for many years there has been a Teachers' Pension Fund as provided by law; that more than 6,500 of the teachers elected on June 23rd are contributors to such fund; that it aggregates more than $500,000, and is made up from payments made by the teachers from their salaries and from general taxation; that the money expended by the Board of Education is made up from general taxation and other sources.

That for several years more than 3,500 of the teachers elected have been and are now members of the Chicago Teachers' Federation, a corporation organized under the laws of Illinois; that the corporation is not for profit, and was formed "to obtain for teachers all the rights and benefits to which they are entitled; the consideration and study of such subjects as the Federation may deem necessary; the consideration and support of the pension law, and the study of parliamentary law."

That the Chicago Federation of Labor is a voluntary association made up of delegates from the trade and labor unions, and that the Teachers' Federation is affiliated with such Labor Federation.

That the American Federation of Labor is a voluntary association of trade and labor unions, and that the Teachers' Federation is affiliated with the American Federation.

That there is also a body of teachers known as the Federation of Men Teachers, and also a similar body known as the Federation of Women High School Teachers; that the members of these two organizations contributed to the pension fund, and are affiliated with the Chicago and American Federations of Labor.

That the board has ordered printed 7,000 copies of a pledge for the teachers to sign, stating that they are not members of the organizations prohibited by the rule above quoted, and is threatening to distribute them among the teachers of the 290 schools, at great expense for the material, printing, etc., and to pay for the same out of the school fund.

That under rules heretofore in force certain classes of teachers were to be given promotion; that this promotion has been refused to any teacher in accordance with the above-quoted rule, and that the moneys for salaries and the pension fund are being held by certain city officials, and that teachers will be dismissed unless they will comply with said rule.

That the actions of the several teachers and the conduct of their respective schools are the same whether or not the teacher belongs to the prohibited organizations.

That a great many of the teachers employed June 23, 1915, have been re-employed each year for many years past, and during a great many years were or have been members of the organizations prohibited by said rule; that probably one-half of the teachers belong to such organizations; that if such rule is enforced teachers will be discharged, the pension fund depleted, and taxpayers be at great inconvenience.

It is contended that the rule conflicts with several

provisions of the State and Federal constitutions, and that it is arbitrary, unreasonable and void.

The answer denies the right of the State's Attorney, either of his own accord or upon the relation of Ida L. M. Fursman, to maintain the bill of complaint. It states that the board, after careful consideration and due deliberation and in the exercise of its sound judgment, found and declared that membership by teachers in labor unions or in organizations affiliated with labor unions was so injurious to the school system as to require the prohibition thereof. It denies that the enforcement of the rule would create confusion; admits that the teachers are as a whole as competent and well qualified as any body of teachers in the United States, but that they need and require a constant and strict disciplinary control; and the answer charges that the prohibition against membership or affiliation with labor unions by teachers is not only just and reasonable but also a necessary disciplinary rule; and denies that the rule violates any natural right or any constitutional provision.

Upon hearing of the motion for a preliminary injunction it was ordered that the writ of injunction issue restraining the defendants from enforcing rule 93-A above quoted, until the further order of the court. A subsequent motion to dissolve this injunction was denied.

The parties complainant are properly joined, and the bill is not multifarious. The State's Attorney is required by statute "to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in his county, in which the people of the State or county may be concerned." Section 5, chapter 14 (J. & A. ¶ 616). That the people are interested in the money disbursed by the Board and are concerned in the management of the public schools is beyond dispute. A taxpayer may maintain

such a bill. *Jones v. O'Connell,* 266 Ill. 443. The nature and function of the Board of Education and the rights of a taxpayer in relation thereto are thus stated in *Adams v. Brenan,* 177 Ill. 194, 198:

"The board of education of the city of Chicago is a public corporation, created by legislative authority as an agent of the State for the purpose of maintaining public schools and school buildings within that subdivision of the State. For the purposes of that function it receives from the taxpayers and holds as a trustee the school fund, and is bound to administer it for the benefit of the beneficiaries of the trust. The taxpayers are in equity the owners of the fund, and the board can only hold and apply it to legitimate purposes of the trust. The law is established, beyond doubt or controversy, that a bill to enjoin public officers so situated from misappropriating the fund in their charge is a proper remedy for a taxpayer."

The suit is not prematurely brought. It does not matter that no teacher has yet been discharged. The bill alleges that the board is preparing to send out notices to the teachers that they must comply with the rule, is spending money, and threatening further to enforce the rule. Now is the proper time for suit to be brought.

It may be conceded that the board has power to pass rules regulating its teaching force, and that generally such matters are within its exclusive discretion; but the board has no power to pass an unreasonable rule in violation of the statute or constitution. *People v. Harrison,* 223 Ill. 540.

Is the rule in question discrimination between different classes of citizens, conferring special privileges upon a class or group less than all? A majority of this court holds that it is. In *Adams v. Brenan, supra,* the board of education sought by rule to restrict the work of repairing a schoolhouse to members of a labor union. The enforcement of the rule was enjoined, the court holding that it created a discrimination between

different classes of citizens.  In its opinion the court said:

"It is unquestionable that if the legislature should enact a statute containing the same provision as this contract in regard to any work to be done for boards of education, or if they should by a statute undertake to require this board, as the agency of the State in the management of school affairs in the city of Chicago, to adopt such a rule or insert such a clause in its contracts, or should undertake to authorize it to do so, the provision would be absolutely null and void as in conflict with the constitution of the State.  If such a restriction were sought to be enforced by any law of the State it would constitute an infringement upon the constitutional rights of citizens, so that the State in its sovereign capacity, through its legislature, could not enact such a provision.  (*Millett v. People,* 117 Ill. 294; *Frorer v. People,* 141 id. 171.; *Braceville Coal Co. v. People,* 147 id. 66; *Ramsey v. People,* 142 id. 380; *Ritchie v. People,* 155 id. 98; *People v. Chicago Live Stock Exchange,* 170 id. 556.)  There is no more reason or justification for such a contract as this than there would be for a provision that no one should be employed except members of some particular party or church.  In any such case it might be said that the board entertained a bona fide opinion that the members of some political party were more intelligent and better capable of performing the work, so that better results would be attained; or that the members of a church, on account of their higher standard of morality, would more faithfully and conscientiously carry out the contract."

And, again:

"The board of education may stipulate for the quality of material to be furnished and the degree of skill required in workmanship, but a provision that the work shall only be done by certain persons or classes of persons, members of certain societies, necessarily creates a monopoly in their favor."

In *Holden v. City of Alton,* 179 Ill. 318, by ordinance the city council sought to prohibit the letting of any

contract for city printing to any office which could not furnish the label of the typographical union. The court held such ordinance void, saying, it "is in violation of common right, tends to create a monopoly and cannot be tolerated. * * * There is here an unequivocal admission of an arbitrary exclusion from the privilege of contracting with the city or laboring for it, of a portion of the citizens, for the sole reason that they are not members of an association." See also, *Mathews v. People,* 202 Ill. 389, and cases there cited.

By these decisions it is settled that any rule which the board of education might pass restricting the employment of teachers to members of any particular societies or unions would be void. It follows logically that a rule which restricts employment to nonmembers of such societies or unions is also void.

Is it valid as a disciplinary measure? If the board had resolved that it was necessary as a matter of discipline that it would employ as teachers only members of the Chicago Teachers' Federation, would such a restrictive rule be valid? Or that its teachers should all be Presbyterians or Catholics as a necessity for "efficiency of the teaching force?" Or that no members of such churches should be employed for the same reason? Or that no member of a particular political party should be employed because membership of the teacher in such party was "detrimental to the welfare of the public school system?" The answers to such queries must manifestly be against the validity of such a rule. In the *Adams* case, *supra,* the rule passed by the board gained no virtue because the "board may have been of the opinion that its action was for the benefit of the public." The law is that the board may stipulate for the amount of training, the degree of proficiency and the physical fitness of its teaching employees, but it cannot provide that its teaching shall be done only by certain persons or classes of persons members or nonmembers of certain societies.

Furthermore, we have before us only the assertion by a scant majority of the board that membership in the banned societies is inimical to proper discipline. The rule was adopted by a vote of 11 favorable to 9 opposed. No facts on this point are presented or tendered either by bill or answer. It is possible that the validity of such a rule as a measure of discipline might be the proper subject of judicial consideration in connection with the necessities arising from facts and occurrences, but no such necessities are now before us.

It is a sound principle that agents to whom is delegated power to expend moneys derived from the public generally should not be permitted arbitrarily to contract for the expenditure of those moneys exclusively with a particular class of the public. However, very pertinent to this and like cases are the words of Mr. Justice Holmes: ''General propositions do not decide concrete cases. The decision will depend on a judgment or intuition more subtle than any articulate major premise.''

A majority of this court is of the opinion that the motion to dissolve the injunction was rightly determined, and the order denying the motion is affirmed.

*Affirmed.*

Mr. Justice Holdom dissenting.