(No. 10932.—Reversed and remanded.)
THE PEOPLE ex rel. Ida L. M. Fursman, Appellee, vs. THE CITY OF CHICAGO et al. Appellants.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. SCHOOLS—*when rule of board of education does not impair teacher's contract of employment.* A rule of the board of education of the city of Chicago prohibiting teachers from being members of or affiliated with trade unions, adopted after the election of teachers in June but before the opening of the school year, does not impair the contracts of employment of such teachers where the election is a mere offer of employment subject to the rules of the board, which is accepted by the teachers appearing for duty on the first day of school.

2. SAME—*board of education of city of Chicago cannot employ teachers for more than one year.* Under the statute the board of education in cities having a population of 100,000 or more has no power to make contracts for the employment of teachers to extend beyond the ensuing school year.

3. SAME—*board of education of city of Chicago may refuse to employ teachers belonging to trade unions.* The board of education of the city of Chicago has a right to employ as a teacher any qualified person it chooses and may adopt a rule forbidding the employment of any teachers who are members of or affiliated with trade unions, as neither the constitution nor the statute places any restriction on the power of the board in such respect.

4. SAME—*contribution to teachers' pension fund does not give teacher any right to be re-employed.* The fact that a teacher in the schools of the city of Chicago has contributed to the teachers' pension fund does not give such teacher any right to be re-employed, nor does it restrict the board of education in its right to select such persons as teachers as it may desire to employ.

FARMER and CARTER, JJ., specially concurring.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ANGUS ROY SHANNON, and CHAUNCEY M. MILLAR, for appellant the Board of Education.

SAMUEL A. ETTELSON, Corporation Counsel, and CHAS. E. PEARCE, for appellant the city of Chicago.

MACLAY HOYNE, State's Attorney, (I. T. GREENACRE, and ALICE GREENACRE, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county perpetually enjoining the board of education of the city of Chicago, its officers and agents, and certain officers of the city of Chicago, from enforcing or attempting to enforce a certain rule of the board of education of the city of Chicago known as rule 93-*a*, which was originally adopted by the board on September 1, 1915, and thereafter amended on September 29, 1915. The rule as amended is as follows:

"1. Membership by teachers in labor unions, or in organizations of teachers affiliated with a trade union or a federation or association of trade unions, is inimical to proper discipline, prejudicial to the efficiency of the teaching force and detrimental to the welfare of the public school system, therefore such membership or affiliation is hereby prohibited. Membership in some teachers' organizations which have officers, business agents or other representatives who are not members of the teaching force is inimical to proper discipline, prejudicial to the efficiency of the teaching force and detrimental to the welfare of the public school system, therefore membership in such of said last mentioned organizations as this board hereafter shall determine are inimical, prejudicial or detrimental, as aforesaid, is hereby prohibited.

"2. All members of the education department who are now members of any such prohibited organizations shall forthwith discontinue their membership therein, and shall within three (3) months from the date of the adoption of this rule furnish satisfactory evidence that such membership has been discontinued.

"3. No person shall be employed hereafter in any capacity in the education department until such person shall state in writing that he or she is not a member, and will

not, while employed in the education department, become a member of any such prohibited organization.

"4. No member of the education department shall be eligible hereafter for promotion, advancement in salary or transfer from school to school until such person shall have stated in writing that he or she is not a member of any such prohibited organization.

"5. Any member of the education department who shall be found guilty of violation of any provisions of this rule shall be liable to dismissal from the service or to such lesser disciplining as this board, in its discretion, in each case shall determine."

The bill for injunction alleges, and the proof shows, that there are more than 7000 teachers employed by the board of education of the city of Chicago, of whom more than 2000 have taught in the public schools of the city of Chicago for more than eleven years; that for several years continuously last past more than 3500 of these teachers have been and are members of the Chicago Teachers' Federation, which is affiliated with a federation of trade unions; that the Chicago Teachers' Federation is a corporation not for profit organized on April 9, 1898, under the general Incorporation laws of this State; that the object for which said corporation was formed, as expressed in its charter, is "to obtain for teachers all the rights and benefits to which they are entitled, the consideration and support of the pension law and the study of parliamentary law;" that the Chicago Federation of Labor is, and since November 9, 1896, has been, a voluntary association of delegates selected by and from the trade and labor unions in the city of Chicago; that in November, 1902, the Chicago Teachers' Federation became, and has since continued to be, affiliated with the Chicago Federation of Labor; that the American Federation of Labor is, and for more than twenty years continuously has been, a voluntary association of trade and labor unions and organizations; that in 1914 members of

the Chicago Teachers' Federation affiliated with the American Federation of Labor; that for more than two years last past about 232 men, who are and have been during all that time teachers in the public schools of the city of Chicago, have been organized into a body known as the Federation of Men Teachers, and about 95 women teachers in the public high schools of the city are organized into a body known as the Federation of Women High School Teachers, and that each of said bodies for more than two years last past has been affiliated with the American Federation of Labor and the Chicago Federation of Labor.

Said rule 93-*a,* as originally passed, absolutely prohibited membership by teachers in teachers' organizations which have officers, business agents or other representatives who are not members of the teaching force, as well as membership in labor unions or in organizations of teachers affiliated with a trade union or a federation or association of trade unions. The rule was amended by the board of education to read as hereinabove set forth after the bill of complaint was filed herein and after a temporary injunction had been issued by the superior court herein enjoining the enforcement of the rule as originally passed.

The bill of complaint further alleges, and the proof shows, that for many years there have been in force and effect certain rules of the board of education of the city of Chicago providing that all members of the education department, (including teachers,) other than the superintendent and first assistant superintendent, shall be elected at the last regular meeting of the board in June of each year or as soon thereafter as may be practicable; that at such annual election all teachers who have not been notified of unsatisfactory work during the preceding year shall be re-elected for the ensuing year, and that all regularly elected members of the education department shall hold their positions permanently, subject to the operation of the probation rule and the certificate rules and to transfer by the

278 — 21

superintendent from grade to grade and from school to school whenever deemed necessary for the good of the service, but that the board need not re-elect or retain in service more teachers than in its judgment the needs of the schools require; that on February 18, 1914, the board adopted and established a schedule of salaries fixing the compensation of teachers who were then or might thereafter be employed in the public schools of the city of Chicago, the schedule of salaries thus adopted and established providing that each teacher should be paid compensation according to the length of service in the public schools of the city, ranging from $675 for the first year of service to $1475 for the thirteenth year of service in the primary grades, and from $700 for the first year of service to $1500 for the thirteenth year of service in the grammar grades.

The bill further alleges, and the proof shows, that for many years there has existed and still exists in the city of Chicago the public school teachers' pension and retirement fund, organized and existing under and by virtue of the statutes of the State of Illinois; that more than 6500 of the teachers in the public schools of the city are and for many years continuously have been contributors, as required by law, to said pension fund, and each has contributed to said fund a large sum of money; that under the statutes of this State large contributions from public moneys raised by taxation have been made to said pension fund, and that the contributions by teachers are not kept separate from those made from public moneys raised by taxation but that all contributions are mingled in one fund; that the teachers now engaged in the public schools of the city have contributed to the pension fund, in the aggregate, more money than now remains in said fund; that moneys have from time to time been paid out of said fund to teachers who were willing to continue as teachers but were discharged or not re-employed, the sum paid to each being the amount which she had contributed to the fund, and

that any such sum so returned to a teacher is paid from a fund made up, in part, by moneys received from taxation.

The bill alleges that the board of education threatens to enforce rule 93-*a* in all respects and to dismiss and discharge all teachers who have not within three months from September 1, 1915, signed and filed statements that they are not members of the prohibited organizations specified in rule 93-*a* and that only those who have signed such statements will be retained or employed as teachers, and that the board will cause and permit no increase in salary by reason of a teacher's increase in length of service, as provided in the schedule of salaries above mentioned, until and unless such teacher shall have signed and filed such statement, and that the said threat will be carried out and rule 93-*a* enforced by the board unless the defendants are enjoined from so doing.

The bill charges that the enforcement of said rule 93-*a* would cause an unlawful and unconstitutional diversion of moneys raised by taxation, would be a discrimination between different classes of teachers, would tend to create a monopoly, would be an unlawful and unconstitutional deprivation of the right of union teachers to freely contract for and concerning their services and without due process of law would deprive them of liberty and property, and would be an abuse of the discretion vested by law in the board of education; that said rule draws an unwarranted distinction between union and non-union teachers and discriminates between particular persons and groups of persons within the same class, and is therefore arbitrary, unreasonable and void and in violation of certain provisions of the State and Federal constitutions particularly set forth in the bill.

It is one of the contentions of appellee that as the teachers for the school year 1915-16 were elected by the board of education in June, 1915, their contracts of employment for that year were impaired by the ordinance or rule en-

acted on September 1, 1915, as amended on September 29. All the former teachers employed in the public schools of Chicago who were re-elected for the school year 1915-16 were re-elected by the board at a meeting held during the month of June, 1915, and employment for that year was thereby offered each of such former teachers at the salaries provided for by the ordinances or rules of the board. The bill does not allege, nor does the answer show, that the board required any of the teachers to indicate in any manner or within any specified time whether the offer of employment for the succeeding year would be accepted or rejected. It does not appear that any teacher expressly accepted or rejected this offer of employment prior to the opening of school in September. The offer stood open until September 7, 1915, the day the schools were opened for the school year. By appearing on September 7 and taking up the work assigned, the teachers for the first time signified their acceptance of this offer of employment, so far as the record in this case discloses. The offer of the board, therefore, did not terminate in a contract with any of the teachers until September 7. Until that time the board had the right to modify its offer of employment, change it in any particular it might see fit or withdraw it entirely without affecting any contractual right. While this offer remained open and before it was accepted or any contract made or entered into, the ordinance or rule in question was enacted by the board of education on September 1, 1915. While it is true that this ordinance or rule was thereafter amended on September 29, it was not amended as to the matters which are here complained of. By its terms it now prohibits, as it did then, any teacher from holding membership in a labor union or in an organization of teachers affiliated with a trade union or a federation of trade unions. The bill alleges, and the answer admits, that the offer of employment made to the teachers in June, 1915, was made subject to the existing and all subsequently enacted rules of

the board of education. At the time this offer of employment was accepted this ordinance or rule had been enacted and had become a part of the offer of employment. It thus entered into the contract for that school year, and there is no question here of the infringement or impairment of a contract. This leaves, then, as the sole question to be determined, whether the board of education has the right, in the selection of teachers, to discriminate between those who are members of a federation or union and those who are not members of any such federation or union, and whether its action in this regard violates any constitutional or statutory provision.

As counel for appellee state, this is a question of first impression in this State. While a large number of authorities have been cited on both sides, none of them are in point or helpful in determining the question at issue. Elaborate arguments have been presented on both sides, but the question, after all, is a simple one and presents no great difficulties. By the statute the board of education in cities having a population of 100,000 or more is given complete control of the schools of the city. Among its powers is that of employing teachers and fixing the amount of their compensation. It is empowered to enact such ordinances as may be deemed necessary and expedient for the proper management of the schools. The board consists of twenty-one members, appointed by the mayor of the city. The tenure of office is three years, the terms of office of seven of the members expiring each year. A new board is thus brought into existence each year. The board has no power to make contracts for the employment of teachers to extend beyond the ensuing school year. (*Stevenson* v. *School Directors,* 87 Ill. 255; *Davis* v. *School Directors,* 92 id. 293.) A new contract must be made each year with such teachers as it desires to retain in its employ. No person has a right to demand that he or she shall be employed as a teacher. The board has the absolute right to decline to employ or

to re-employ any applicant for any reason whatever or for no reason at all. The board is responsible for its action only to the people of the city, from whom, through the mayor, the members have received their appointments. It is no infringement upon the constitutional rights of anyone for the board to decline to employ him as a teacher in the schools, and it is immaterial whether the reason for the refusal to employ him is because the applicant is married or unmarried, is of fair complexion or dark, is or is not a member of a trades union, or whether no reason is given for such refusal. The board is not bound to give any reason for its action. It is free to contract with whomsoever it chooses. Neither the constitution nor the statute places any restriction upon this right of the board to contract, and no one has any grievance which the courts will recognize simply because the board of education refuses to contract with him or her. Questions of policy are solely for determination of the board, and when they have once been determined by it the courts will not inquire into their propriety.

The existence of a teachers' pension fund in the city of Chicago does not restrict the board of education in its right to select such persons as teachers as it may desire to employ, nor does it confer upon one who has been a contributor to such fund any right to demand that he or she be re-employed. The only right upon which a contributor to the fund can insist in case the board concludes that it will not re-employ him or her, is the right to receive at once the money he or she may have contributed to the fund. (Hurd's Stat. 1916, chap. 122, sec. 161.)

In enacting this ordinance or rule the board of education did not interfere with the rights of any citizen of the city of Chicago, and it has the right to enforce the rule.

The decree of the superior court is reversed and the cause is remanded, with directions to dissolve the injunction and dismiss the bill.

*Reversed and remanded, with directions.*

FARMER and CARTER, JJ., specially concurring:

We concur in the conclusion that this court cannot say, from an inspection of the rule here involved, that the board of education had no power to adopt or enforce it either because it is unreasonable or contrary to public policy, but we do not concur in all the reasoning of the opinion. The board of education is charged with the maintenance of the public schools and the employment of teachers therein. It may enact all reasonable rules for the promotion of the efficiency of the schools under its control. This power does not, however, include the power to adopt any kind of an arbitrary rule for the employment of teachers it chooses to adopt, for a rule can easily be imagined the adoption of which would be unreasonable, contrary to public policy, and on the face of it not calculated to promote the best interests and welfare of the schools. In our opinion courts would have the power, in the interests of the public good, to prohibit the enforcement of such an arbitrary rule. The rule here under consideration purports to have been adopted for the promotion of the best interests of the public schools, and recites that membership by teachers in the prohibited organizations is inimical to proper discipline, prejudicial to the efficiency of the teaching force and detrimental to the welfare of the public school system. If that be true, then the board had the power, in its discretion, to declare by rule that it would not employ such teachers. In our opinion the adoption of the rule was an exercise of the discretionary power of the board which courts cannot interfere with; but a rule that would clearly have no relation to the good of the schools, discriminating against the employment of certain classes of persons as a purely arbitrary exercise of the board's discretion, would not be, in our judgment, a valid exercise of the board's power.