HILDA BENSON, ETHEL BLOMGREN, MABEL ERICKSON, SADIE ERICKSON, INGA HOEM, HELEN McGREGOR, MURIEL RALPH, MYRTLE STEWART, Respondents, v. SCHOOL DISTRICT NO. 1 OF SILVER BOW COUNTY, James Curtin, Newell Evans, John F. Kingston, Kevin J. Shannon, Harry Robinson, Robert W. Sparks, Thomas J. Stanisich, Constituting the Board of Trustees of Said School District No. 1, BUTTE TEACHERS UNION, LOCAL 332, American Federation of Teachers (AFL-CIO), Appellants,

MONTANA EDUCATION ASSOCIATION and NATIONAL EDUCATION ASSOCIATION OF THE UNITED STATES, AMERICAN FEDERATION OF TEACHERS, MONTANA STATE AFL-CIO, Interveners.

No. 9908.

Submitted January 20, 1959. Decided June 20, 1959.
As Amended on Denial of Rehearing October 1, 1959.

344 Pac. (2d) 117.

78

See **C. J. S.** Schools and School Districts, § 187.

Maurice F. Hennessey, Robert J. Holland, Butte, Arnold H. Olsen, Helena, for appellants.

Maurice F. Hennessey, Butte, and Arnold H. Olsen, Helena, argued orally for appellants.

Wesley W. Wertz, Helena, Henry E. Butler, Jr., Washington, D. C., John Ligtenberg, Chicago, Ill., A. H. Lalime, Seattle, Wash., for interveners.

Wesley W. Wertz, Helena, Henry E. Butler, Jr., Washington, D. C., and John Ligtenberg, Chicago, Ill., argued orally for interveners.

Frank Burgess, Butte, for respondents.

MR. JUSTICE ANGSTMAN:

Plaintiffs brought this proceeding in mandamus and for a declaratory judgment to compel the defendant School District to enter into contracts with them and to require the issuance of salary warrants for the payment of the salary schedule designated under what is known as the "Master Agreement" made and entered into between the School District and the Teachers' Union. They also prayed for a declaratory judgment, declaring that the defendants have no authority to discriminate against plaintiffs or any other teachers who do not become members of the Butte Teachers' Union, and that the provisions of the Master Agreement providing for union security be declared null and void and of no effect. It also sought attorneys' fees.

Plaintiffs are school teachers of defendant School District. They obtained a judgment in their favor upon the pleadings, and defendants and certain interveners appealed.

Since the judgment was entered on the pleadings it becomes necessary to consider the state of the pleadings. The complaint alleges that the plaintiffs are school teachers in School District No. 1 of Silver Bow County; that the defendants are the trustees of that School District; that on the 2nd day of April 1956, the defendant School District approved what it called a Master Agreement which among other things contained the following provisions that "The single salary principle of equal salary for equal training and experience shall prevail."

It established a salary schedule for the plaintiffs of $5,100 per year for four of them and $4,900 for the other four. The Master Agreement then contained these clauses:

"(a) All members now employed by the Board, who are not now members of the Union, must become members of the Union on or before the 4th day of September, 1956, and shall maintain their membership in the Union in good standing as defined by the constitution and by-laws of the Union during the term of their employment.

"(b) All teachers now employed by the Board, who are now members of the Union, shall maintain their membership in the Union in good standing as defined by the constitution and by-laws of the Union during the term of their employment.

"(c) All new teachers or former teachers employed by the Board shall become members of the Union within thirty (30) days after date of their employment and shall maintain their membership in good standing as defined in the constitution and by-laws of the Union during the term of their employment.

"The provisions of this Union Security Clause shall be adopted as a Board Rule and shall be a condition of all contracts issued to any teacher covered by this agreement.

"Any teacher who fails to sign a contract which includes the provisions of this Union Security Clause and who fails to comply with the provisions of this Union Security Clause shall be

discharged on the written request of the Union, except that any such teacher who now has tenure under the laws of the State of Montana shall not be discharged but shall receive none of the benefits nor salary increases negotiated by the Union and shall be employed, without contract, from year to year on the same terms and conditions as such teacher was employed at during the year 1955-1956.''

The complaint alleges that the plaintiffs are not members of the Butte Teachers' Union Local 332, and that they all signed and returned the contracts to the trustees of the district, but deleted therefrom the provisions that required them to become members of Butte Teachers' Union; that each of the plaintiffs was then advised by letter that their salaries would be at the rates enjoyed by them prior to the making of this contract, which was $300 per year less than the contract price stated in the Master Agreement. This letter after referring to the salary at which they would be retained contained a clause that should the teachers thereafter sign the Master Agreement they should then receive the higher salary from the date of so signing. The complaint alleges that it is above and beyond the powers of the defendant Board of Trustees to compel the plaintiffs to join or belong to the Butte Teachers' Union in order to qualify for and receive the wages, salary and compensation fixed by the Board.

It alleges the failure and refusal of the defendant Trustees to issue to the plaintiffs warrants for the payment of their increased salary though demand therefor has been made. It is alleged that the defendant Board of Trustees did issue to plaintiffs warrants for the lesser salary. It is alleged that plaintiffs entered upon their duties as teachers and have continued to perform those duties as teachers for the School District.

The Montana Education Association and National Education Association were permitted to intervene and they filed a complaint in intervention in which they alleged that the plaintiffs are members of those organizations; they reiterated the allegations contained in the Master Agreement so far as they relate to the Union Security Clause and alleged that such provisions did

not appear in prior contracts between the School District and these plaintiffs. In general they joined with the plaintiffs and sought the same relief which plaintiffs seek.

The American Federation of Teachers was permitted to intervene and it to all intents and purposes promoted the cause of the defendants. Otto Habedank, an attorney at law of Sidney, Montana, was also permitted to appear as amicus curiae. He advanced the cause of the plaintiffs. The Montana State Federation of Labor and the CIO were also permitted to intervene. They unite with the defendants in asserting the validity of the Master Agreement and all its provisions.

All of the material allegations of the complaint are admitted except denial is made of certain conclusions of law drawn from the facts alleged. Defendants denied that they fixed the wages, salary and compensation of the plaintiffs as alleged in the complaint but they did admit that they offered the schedule of rates as alleged but upon condition that the Union Security Clause be also a part of the contract. They allege in substance that when the plaintiffs rejected the Union Security Clause of the agreement that the defendants were obliged under section 75-2401, R.C.M. 1947, to employ the plaintiffs on the basis of their prior year's salary and defendants deny specifically that plaintiffs are entitled to have a contract of employment in writing giving them the salary to which they claim they are entitled and allege that they are only entitled to a contract for a salary which they obtained the year previous to the offering of the contract in question here.

Defendants deny specifically that the plaintiffs were compelled to employ counsel and deny that the sum of $5,000 is reasonable compensation to be paid their counsel, and deny that plaintiffs have no other plain, speedy and adequate remedy in the ordinary course of law.

So far as material here the answer set up an affirmative defense to the effect that if the plaintiffs are entitled to the increased salary for which they claim, that they may recover the same in an action at law.

In another affirmative defense defendants allege that they are authorized by law to exercise a discretion in fixing the rate of wages and the terms and conditions of employment of the teachers under section 75-1632, and that this discretion may not be controlled by mandamus.

As a further affirmative defense the defendants allege in substance that the defendants executed to plaintiffs checks for the lesser salary in accordance with the requirements of the law, and that the checks were accepted and cashed by the plaintiffs as payment for their services rendered in accordance with the contract of employment.

The court after a hearing rendered judgment on the pleadings granting plaintiffs the relief which they sought. In general the court held that the Union Security provisions of the contract tendered to plaintiffs were null and void as against teachers who have tenure under the laws of the state. It ordered execution of contracts under the salary schedules provided in the Master Agreement.

The court expressly found that defendants appeared and made defense in this proceeding in good faith, and fixed the sum of $2,000 as and for a reasonable attorneys' fee.

One of the main contentions on the appeal is whether the plaintiffs may proceed in mandamus, it being the contention of the defendants that under sections 93-9102 and 93-9103 the writ does not lie where there is a plain, speedy, and adequate remedy in the ordinary course of law, and it is the contention of defendants that such a remedy does exist in the ordinary course of law.

They point out that under section 75-1632, the Board of Trustees has the power and the duty to prescribe and enforce rules for the government of schools under their supervision, and to employ and discharge teachers, and to enter into all contracts of employment of teachers, with the right under section 75-4231 to fix the salaries and compensation of such teachers. The contention of defendants is that when the plaintiffs deleted from the contract the objectionable matter regarding Union Security

84

they in effect made a counter offer to the defendants which was not accepted and that such being the case plaintiffs were entitled only to the benefits of section 75-2401 reading:

"After the election of any teacher or principal for the third consecutive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary."

The plaintiffs' position is that the Board of Trustees did fix the salary of the teachers pursuant to the Master Agreement; that their action in so doing was not affected by writing into the contract void and illegal provisions with respect to Union Security.

That plaintiffs have no plain, speedy, or adequate remedy in ▇ the ordinary course of law is apparent from the fact that they are not in a position to sue in contract for the increased salaries because they have no written contract as the statute requires.

For this reason plaintiffs ask that the court compel the defendants by mandamus to execute the contract in accordance with the salary schedule. Other courts have held, under facts very similar to those here, that invalid and void provisions of a contract will be ordered by mandamus to be eliminated from the contract and the contract executed without such illegal provisions. Tolman v. Underhill, Cal. 1951, 229 Pac. (2d) 447, and Tolman v. Underhill, 39 Cal. (2d) 708, 249 Pac. (2d) 280, and see Pallas v. Johnson, 100 Colo. 449, 68 Pac. (2d) 559, 110 A.L.R. 1403, and State ex rel. United District Heating Inc. v. State Office Bldg. Comm., 124 Ohio St. 413, 179 N. E. 138, 80 A.L.R. 1376.

The Union Security Clause is no part of the consideration ▇ moving to the School District in the master agreement within the meaning of section 13-504, so strongly relied on by amici curiae on motion for rehearing. But were we to say that the whole of the master agreement is void because of section 13-504 because it contains a void provision, the result would be no different.

The fact is that most of the teachers of defendant school district actually receive the increased salary provided for in the master agreement. Likewise that document shows that the school board was satisfied with the work of the plaintiff teachers but denied them the increase in salary solely because they refused to agree to the security provisions of the agreement. If we assume the master agreement is void *in toto* because of an invalid clause and if we assume that the clause relating to Union Security is invalid still plaintiffs are entitled to be treated the same as the other teachers so far as salary is concerned.

Hence, we come to the question whether the Union Security Clause in the contract is void and illegal as contended by plaintiffs. We hold that it is.

It is not competent for the school trustees to require union membership as a condition to receiving the increased salary. So far as this case is concerned it is sufficient to say that the Legislature has not given the school board authority to make the discrimination sought to be imposed here.

We do not pass upon the point whether it would be competent for the Legislature to place such authority in the school trustees. There is respectable authority holding that such action by the Legislature would be unconstitutional. Thus in the note in 31 A.L.R. (2d) sec. 19, p. 1170, it is said: "Constitutional and statutory provisions granting the right of private industry to bargain collectively do not confer such right on public employers and employees."

In Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A. (2d) 482, 484, 31 A.L.R. (2d) 1133, the court had before it the question, among others, of whether the teachers' association, which was a voluntary association and an independent labor union to which nearly all the teachers belonged, could engage in a strike. The court answered by saying:

"Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free en-

terprise, is absent. It should be the aim of every employee of the government to do his or her part to make it function as efficiently and economically as possible. The drastic remedy of the organized strike to enforce the demands of unions of government employees is in direct contravention of this principle. It has been so regarded by the heads of the executive departments of the states and the nation. Most of the text writers refer to one or more of the following statements by three of our recent presidents. They are quoted, for example, in 1 Labor Law Journal 612 (May, 1950): 'There is no right to strike against public safety by anybody anywhere at any time' (Calvin Coolidge on the Boston police strike). This same strike was characterized by President Wilson as 'an intolerable crime against civilization.' President Franklin D. Roosevelt said in a letter to the president of the National Federation of Federal Employees on August 16, 1937: 'Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of Government employees. * * * [A] strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those who have sworn to support it, is unthinkable and intolerable.' As the author of the article cited says, 'The above statement by President Roosevelt, who certainly was no enemy of labor unions, epitomizes the answer to the problem. It seems to be axiomatic'.''

The court concluded by saying: "That right has usually been tested by an application for an injunction forbidding the strike. The right of the governmental body to this relief has been uniformly upheld. It has been put on various grounds: public policy; interference with governmental function; illegal discrimination against the right of any citizen to apply for government employment (where the union sought a closed shop)."

Other questions were considered by the court in that case. The court pointed out that some of the questions were too general to permit of a categorical answer, but the court did say

that "an agreement by the board to hire only union members would clearly be an illegal discrimination."

The National Labor Relations Act expressly excepts as employers the United States and any state or political subdivision thereof. 29 U.S.C.A. sec. 151, and see 56 C.J.S. Master and Servant sec. 28(7), p. 127. That is the rule generally as to public employment unless the statute provides otherwise. See 31 Am. Jur., Labor, sec. 56, p. 429; Petrucci v. Hogan, 5 Misc. (2d) 480, 27 N.Y.S. (2d) 718; City of Los Angeles v. Los Angeles Bldg. & Construction Trades Council, 94 Cal. App. (2d) 36, 210 Pac. (2d) 305; City of Pawtucket v. Pawtucket Teachers' Alliance, R. I. 1958, 141 A. (2d) 624; Manchester v. Manchester Teachers' Guild, 100 N. H. 507, 131 A. (2d) 59; and compare Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A. (2d) 745, 162 A.L.R. 1101.

The case of People by Hoyne ex rel. Fursman v. City of Chicago, 199 Ill. App. 356, had a similar question before it. There the Board of Education adopted a rule forbidding the employment of teachers affiliated with the labor union. The court held that this was a discrimination between different classes of citizens conferring special privileges upon a class or group less than all. On consideration of the same question in 278 Ill. 318, 116 N. E. 158, L.R.A. 1917E, 1069, the Supreme Court of Illinois reached a different conclusion and held that it was competent for the board of education of the City of Chicago to enforce the rule prohibiting the teachers from becoming members in a labor union. Whether we would agree with the court's opinion in that case, we need not here determine. The court upheld the rule there involved because the board of education recited in the rule that membership in a union was inimical to proper discipline, prejudicial to the efficiency of the teaching force and detrimental to the welfare of the public school system. The board of education in that case was at least consistent. It refused to employ teachers who were members of a labor union. Here the defendant board does not refuse employment for not belonging to the union, but seeks to impose a penalty for not

becoming members by seeking to withhold the increase in salary to those who do not belong to the union.

The same is true in the case of Seattle High School Chapter No. 200, of the American Federation of Teachers v. Sharples, 159 Wash. 424, 293 Pac. 994, 72 A.L.R. 1215, relied on by defendants. That case differs from this because in that case the very employment of the teachers was made dependent upon their belonging to a labor union. Here the defendant Board is willing to employ the plaintiffs whether they belong to the Union or not but they undertake to deprive the plaintiffs of the increased salary unless they become members of the labor union. In other words, the plaintiffs' employment, according to the board of trustees of the defendant School District, does not depend upon their affiliation with the union but only their right to the increased salary. Hence, for this reason the Washington case is not controlling here.

For the purposes of this case it is sufficient to say that the School Trustees have no authority or power to discriminate between the teachers employed by it as to the amount of salary paid to each because of their membership or lack of membership in a labor union. The School Trustees have no authority to invade that field. As well might it be argued that the Board of School Trustees might provide that the increased salary shall not be allowed to those who do not affiliate with a certain lodge, service club, church or political party.

It is our view that the trial court was right in its ruling, that the clause complained of here and which was deleted by the teachers is void and illegal, and that the writ of mandamus issued by the trial court should in all respects be affirmed unless there is merit in defendants' contention as to attorneys' fees.

The contention of defendants is that the attorneys' fees must be pleaded and proved. There is no question but what they are properly pleaded here. The complaint asks for $5,000. That allegation was put in issue by the answer of the defendants, and it is the contention of the defendants that they were en-

titled to a jury trial on that issue and that it could not be settled by the court on motion for judgment on the pleadings. As above noted, the court allowed the sum of $2,000 as a reasonable attorneys' fee. Defendants contend that plaintiffs offered no proof of the employment of an attorney or as to the amount of money expended in the employment of an attorney. Defendants rely upon the cases of State ex rel. Shea v. Cocking, 66 Mont. 169, 213 Pac. 594, 28 A.L.R. 772; State ex rel. Golden Valley County v. District Court, 75 Mont. 122, 242 Pac. 421; State ex rel. Phillips v. Ford, 116 Mont. 190, 151 Pac. (2d) 171; and State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 Pac. (2d) 915.

It is the plaintiffs' position that since the judge observed the extent of the services rendered by counsel the case falls within the rule of State ex rel. Lynch v. Batini, 103 Mont. 353, 62 Pac. (2d) 565, 569, where the court said: "While the court in such a proceeding may secure the aid of expert testimony, it is not bound to follow it when such testimony is received. Here counsel signed the petition and appeared on behalf of the relator throughout the entire course of this proceeding; he performed much of his labor in the presence of this court; the pleadings also evidence it. For us to hold, before we could find that some service has been performed, that relator should have proved all the service rendered by his counsel, would be to insist on an idle act not required by law. (Sec. 8761, Rev. Codes [1935, now R.C.M. 1947, sec. 49-124].)"

Plaintiffs' contention on this point also must be sustained. The judgment is affirmed.

MR. JUSTICE CASTLES concurs.

THE HONORABLE ERNEST E. FENTON, District Judge, specially concurring:

I agree with the rule stated in the dissenting opinion that the applicant for a writ of mandate "must establish a clear

legal right to the writ, * * * and a violation of duty by the person sought to be coerced."

That such a right and duty has been established by the plaintiffs seems to me to be apparent from the pleadings upon which the judgment herein was given.

It is alleged in Paragraph X of the petition and complaint that the Board of Trustees tendered a contract to each of the plaintiffs wherein the salary to be paid was fixed at $5,100 each for four of the plaintiffs, and $4,900 for each of the other four. This allegation is admitted by the defendant School Board. Thus it appears that the defendant Board did perform its legal duty (R.C.M. 1947, secs. 75-1632, and 75-4231) to employ teachers and fix their salaries.

It is further alleged in the petition and complaint, and admitted by the answer of the School Board, that all of the plaintiffs signed and returned the above-mentioned contracts "deleting therefrom a provision which seemed to require that these plaintiffs become members of the Butte Teachers' Union." Further it is alleged in the petition and complaint, and admitted by the School Board's answer,

"That subsequently, each of the above-named plaintiffs was advised by letters from the Superintendent of Schools of said School District No. 1, of Silver Bow County, at the direction of the said Board of Trustees that the salaries of each of the above-named plaintiffs would not be at the rates stated in the contracts tendered as above stated but that the salaries for the school year 1956-1957 for the said plaintiffs would be as follows, to-wit: [Here follows a schedule showing a salary rate of $4,800 for each of the plaintiffs who had previously been elected at salaries of $5,100, and a salary rate of $4,600 for each of the plaintiffs who had previously been elected at salaries of $4,800.]

"That the letter from the Superintendent of Schools was accompanied by a copy of a resolution *adopted by said Board on the 7th day of May, 1956,* which resolution, in part, provides as follows: 'that said teachers (referring to all of the plaintiffs herein), and each of them, are hereby rehired by the Board at

the same salary and upon the same conditions each of them received for the school year 1955-1956 until such time as any of them execute the same contract as was heretofore tendered to her and any such teacher shall then receive the salary originally offered her from the date of the signing of such contract'.'' Emphasis supplied.

Thus it appears that, after the Board had acted, pursuant to statute, by employing the plaintiffs and fixing their salaries, it then undertook to retract the offered contracts because the plaintiffs deleted therefrom a provision requiring membership in the Butte Teachers' Union, which provision, as shown by the majority opinion herein, is invalid.

R.C.M. 1947, sec. 75-2401, contains the following provision, ''After the election of any teacher or principal for the third consecutive year in any school district in the state, such teacher or principal so elected shall be deemed re-elected from year to year thereafter at the same salary *unless* the board of trustees shall by majority vote of its members *on or before the first day of April* give notice in writing to said teacher or principal *that he has been re-elected* or that his services will not be required for the ensuing year.'' Emphasis supplied.

The notice that the plaintiffs would be deemed re-elected, purportedly given under the statute last quoted, was not given until after May 7th. There can therefore be no valid contention that the School Board acted pursuant to this tenure statute which requires a notice on or before April 1st. See Day v. School District No. 21, 98 Mont. 207, 216, 38 Pac. (2d) 595, holding that action taken by a School Board subsequent to the date fixed by the tenure statute was untimely and of no effect.

The election of the plaintiffs was valid in all respects save as to the condition attached thereto requiring the plaintiffs to become members of the union. That action of the Board was not subject to retraction after all of the valid provisions of the offered contract had been accepted by the plaintiffs and only the invalid provision had been deleted. The right of the plaintiffs to the writ of mandate is established by the action of the School

Board in employing them and fixing their salaries pursuant to R.C.M. 1947, secs. 75-1632, and 75-4231. The Board thereby performed its discretionary duty to employ teachers and fix their salaries. The ministerial duty to execute the contracts of employment and order payment of the salaries therein provided for is fixed by R.C.M. 1947, sec. 75-1632, subd. 2, and the Board cannot escape that duty by a belated and untimely attempt to substitute employment under the tenure statute.

School districts are instrumentalities of the state government. State ex rel. Fisher v. School District No. 1, 97 Mont. 358, 365, 34 Pac. (2d) 522. The board of trustees of such a district does not have the same freedom of action as a private employer with respect to the contracts of employment made by it. With respect to the employment of teachers the board of school trustees has such powers as are given to it by law and as are necessarily implied from those granted, and no others. Abshire v. School District No. 1, 124 Mont. 244, 220 Pac. (2d) 1058. As pointed out in the opinion of Mr. Justice Angstman, school boards have not been given power by the legislature to require that teachers must become members of a designated labor union, nor have they been given power in the fixing of teachers' salaries to discriminate against those who do not comply with the board's requirement of union membership.

I concur in that opinion.

MR. JUSTICES BOTTOMLY and ADAIR:

We dissent.

This is an action in mandamus by eight tenure teachers of School District No. 1, Silver Bow County, Montana, consisting of the Butte school system, wherein they seek to compel the trustees of said School District by mandamus to grant them salary increases contained in a written contract entered into between said School District and other school teachers of said District. In applying for this extraordinary remedy and attorneys' fees, the burden is on these eight tenure teachers to clearly show that the district court and this court had and has jurisdic-

tion. To invest the court with jurisdiction it was necessary that these teachers show the existence of two prerequisites, first, that they had a *clear legal right* to have a particular act or duty performed by the said defendant Board of Trustees of School District No. 1 and, second, that "there is not a plain, speedy, and adequate remedy in the ordinary course of the law." R.C.M. 1947, sec. 93-9103. Section 93-9102, R.C.M. 1947, provides for the issuance of a writ of mandate only to compel a board to perform an act which the law specifically enjoins as a duty upon such board.

"It has long been held that the applicant must establish a ▮▮ clear legal right to the writ in his application therefor, and a violation of duty by the person sought to be coerced. The writ is available only where there is no speedy or adequate remedy in the ordinary course of law. State ex rel. Goza v. District Court, 125 Mont. 296, 234 Pac. (2d) 463." See Stewart v. State, 135 Mont. 323, 340 Pac. (2d) 151, 153; State ex rel. Kennedy v. District Court, 121 Mont. 320, 194 Pac. (2d) 256, 2 A.L.R. (2d) 1050; Raleigh v. First Judicial District Court, 24 Mont. 306, 61 Pac. 991; State ex rel. Peel v. District Court, 59 Mont. 505, 197 Pac. 741; State ex rel. Duggan v. District Court, 65 Mont. 197, 210 Pac. 1062; and see Benolken v. Miracle, 129 Mont. 495, 289 Pac. (2d) 953; State ex rel. Peterson v. Peck, 91 Mont. 5, 4 Pac. (2d) 1086. This is the only real issue in this appeal.

Absence of either prerequisite bars the relator's action in mandate. Whether each of the prerequisites exist in this case is the initial issue to be determined on this appeal.

The above majority opinion cites the case of Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A. (2d) 482, 31 A.L.R. (2d) 1133, which is wholly inapplicable to any issue presented by the pleadings and record in the instant case. Next, the majority quotes President Calvin Coolidge's remarks on the Boston police strike and President Franklin Delano Roosevelt's letter of August 16, 1937, expressing his personal views to the president of the Federation of Federal Employees,

94

all of which is equally foreign to any issue that was before the district court or that is now before this court on this appeal. The erection of such "strawman bugaboo" could only result in prejudice to the appellants now before this court. At no time did this case involve any question of either a strike, or of any threat to strike, and in justice to the litigants and its dignity this court should restrain itself from injecting any such foreign prejudicial matter in its determination of this appeal.

Neither are we concerned with the N.L.R.B., whose lack of power in the case incidentally is not for the reason stated in the majority opinion. See Plumbers, Steamfitters, Refrigeration, Petroleum Fitters, and Apprentices of Local 298, A. F. of L., v. County of Door, 359 U. S. 354, 79 S. Ct. 844, 3 L. Ed. (2d) 872.

In order to determine whether or not these eight petitioning tenure teachers were entitled to some clear legal right the appellant trustees of School District No. 1 had wrongfully denied them, it is necessary to examine the status of such tenure teachers under the Montana statutes as of the time such tenure teachers claim their cause of action arose.

School teachers, of necessity and under the applicable Montana statutes, are re-elected annually in the manner prescribed by law. The orderly conduct of school business demands that the school authorities observe the requirements of the statutes in this connection. Express statutes have been enacted setting out the powers and duties of school trustees in respect to employment of the teachers.

R.C.M. 1947, sec. 75-1632, provides:

"*Duties of trustees.* Every school board unless otherwise specifically provided by law shall have power and it shall be its duty: * * *

"2. To employ or discharge teachers, mechanics or laborers, and to fix and order paid their wages; provided, that no teachers shall be employed except under resolution agreed to by a majority of the board of trustees at a special or regular meeting; nor unless such teacher be the holder of a legal teacher's certificate in full force and effect. All contracts of employment of

teachers, authorized by proper resolution of a board of trustees, shall be in writing and executed in duplicate by the chairman and clerk of the board, for the district and by the teacher."

R.C.M. 1947, sec. 75-4231, provides:

*"General powers and duties of boards of trustees.* The board of trustees of every county high school and of every school district maintaining a district high school shall have the power, and it shall be its duty: \* \* \*

"6. To fix the salaries and compensation to be paid to the principal or district superintendent and assistants and teachers employed."

The trustees are by the statutes informed of their powers and duties, *but* the terms of the contracts of employment are not set out in the statutes. These details generally are left to the discretion of the school trustees.

However, to that certain class of teachers, known as tenure teachers, and all of the school teachers here involved are within this class, the discretion of the Board of School Trustees is limited and governed by express statute.

R.C.M. 1947, sec. 75-2401, provides:

*"After the election of any teacher* or principal *for the third consecutive year in any school district in the state, such teacher* or principal *so elected shall be deemed re-elected from year to year thereafter at the same salary unless the board of trustees shall by majority vote of its members on or before the first day of April give notice in writing to said teacher* or principal *that he has been re-elected or that his services will not be required for the ensuing year,* but in this written notice, the board of trustees, if requested by the teacher or principal, must declare clearly and explicitly the specific reason or reasons for the failure of re-employment of such teacher. The teacher or principal, if he so desires, shall be granted a hearing and reconsideration of such dismissal, before the board of trustees of that school district. The request for a hearing and reconsideration must be made in writing and submitted to the board of school trustees within ten (10) days after receipt of notice of dismissal. The board of

trustees must hold a hearing and reconsider its action within ten (10) days after receipt of such request for a hearing and reconsideration. Provided that nothing in this act shall be construed to prevent the re-election of such teacher or principal by such board at an earlier date, and also provided that in case of re-election of such teacher or principal, he shall notify the board of trustees in writing within twenty days after the notice of such re-election of his acceptance of the position tendered him for another year and failure to so notify the board of trustees shall be regarded as conclusive evidence of his nonacceptance of the position."

On April 1, 1956, the eight petitioning tenure school teachers were automatically re-elected as school teachers at precisely the same salary and contract provisions for which they were elected for and during the preceding school year. The Montana statute, section 75-2401, supra, so requires. These provisions of the law of this state became and were a part of the contract of employment, whether embodied in a written contract or not, and the terms and requirements of section 75-2401, supra, became, were and are binding upon both the board of trustees of School District No. 1, and also are binding upon each of the eight petitioning teachers now before this court. See McBride v. School District No. 2, 88 Mont. 110, 115, 290 Pac. 252, and authorities cited therein.

Because the appellant Board of Trustees of School District No. 1, of Silver Bow County, had not taken any affirmative action by a majority vote of its members on or before April 1, 1956, by giving notice to each petitioning teacher that his or her services would not be required for the ensuing year, each of the eight petitioning teachers was, by express statute, automatically re-elected for the ensuing year at the same salary paid during the preceding school year.

Under the undisputed facts presented by the record herein, and the express provisions of the above-quoted Montana statutes, the appellant Board of Trustees allowed, granted and extended to the petitioning tenure teachers, all and everything that the

law required or demanded. For these most cogent reasons the appellant Board of Trustees may not be coerced by mandamus and compelled to grant or allow to any teacher any salary other than that expressly provided by statute for a tenure teacher who has for any reason declined to enter into a new contract providing for a larger salary than that received during the preceding school year.

The appellant Board of Trustees did not and has not denied any one of the eight petitioning tenure teachers any right accorded any of them by the statutes of Montana.

These eight petitioning tenure teachers have not shown in this record, nor can anyone of them show she has a clear legal right, either collectively nor as an individual to have any particular or specific act or duty to be performed in her behalf by the appellant Board of Trustees. Clearly the complaint of the petitioning tenure teachers herein wholly fails to show that petitioners are entitled to any relief by mandamus or otherwise in this action. A very dangerous precedent is set by the holding of the majority opinion, for Montana's boards of school trustees. We would reverse the judgment of the district court and remand the cause with order to dismiss the suit with prejudice.

### ADDENDUM TO DISSENT

Subsequent to the submission of our dissenting opinion herein, District Judge E. E. Fenton prepared a separate opinion concurring with the majority, wherein an attempt is made to answer the legal points raised in our original dissent.

Prior to the enactment, in the year 1913, of a complete school Code, Chapter 76, Laws of 1913, there were no *tenure teachers* in the public schools of Montana.

Since that time, however, there has been established a statutory *probationary period* for public school teachers at the expiration of which period the *probationary teacher* acquires *tenure* status and becomes known as a *tenure teacher*.

*Probationary teachers.* Under a specific statute of this state, in effect during the time of this controversy, a *probationary*

*teacher* was one who had not been elected for a third consecutive year by the board of school trustees.

*Tenure teachers.* After serving the statutory probationary period of three years, then by operation of law, such *probationary teacher,* upon her subsequent election, becomes a *tenure teacher* who "shall be deemed re-elected from year to year thereafter" unless the board of trustees gives to such teacher timely notice, i. e., notice given on or before the first day of April that such teacher's services will not be required for the ensuing year. R.C.M. 1947, sec. 75-2401.

Since the enactment of section 75-2401, supra, its provisions have become a part of every *tenure teacher's* contract of employment. This statute gives every *tenure teacher* special protection in her employment with the board of school trustees. It sets up the *tenure teacher's* clear, legal rights in addition to the duties and liabilities of the school district toward its teachers. It specifies the precise day that the rights of these *tenure teachers* mature and become fixed by law for the ensuing school year. That day is fixed by statute as April 1st of each succeeding year.

Unless some positive action is taken, on or before the first day of April, by the board of trustees of the school district, each and every *tenure school teacher* within the school district is deemed re-elected by statute, section 75-2401, supra, for the ensuing school year.

At no time before April 1st, did the Butte School District take any action whatever under section 75-2401, supra. At no time did the Butte School District give any teacher of the district any notice. Hence, as a simple matter of statutory construction each and every *tenure teacher* in the Butte School District was "deemed re-elected" for the ensuing school year.

Each and all of the eight respondent teachers appearing before this court in this proceeding were and are *tenure teachers.* Where something is by statute "deemed" to have been done, it is to be treated as having been done. See State ex rel. Sinko v. District Court, 64 Mont. 181, 208 Pac. 952, and cases there cited.

Webster's New International Dictionary, 2d Ed., defines "deemed" as "to proclaim, announce."

Having been proclaimed and announced as re-elected on the first day of April 1956, by operation of law, section 75-2401, supra, these eight petitioning *tenure teachers* were entitled only to that which the statute allowed them. Should the trustees of the school district have attempted to give the eight petitioning *tenure teachers* any less than was their due under the statute, only then and not until then would such *tenure teachers* be entitled to maintain an action in mandamus against the board.

On April 1, 1956, the eight respondent *tenure teachers'* rights were matured. Following that date the school board offered to give such eight *tenure teachers* precisely what the law provided for them. They were thus accorded and given their rights under the law and they were and are wholly unable to either plead or prove "a clear legal right" in themselves "to the relief prayed for, and a violation of duty upon the part of the person or officer sought to be coerced." See State ex rel. Grant v. Eaton, 114 Mont. 199, 204, 133 Pac. (2d) 588, 590.

Each of the eight complaining *tenure school teachers,* by operation of law, was given a contract for her employment during the entire school year. Each accepted such contract and each taught and performed under such contract for which performance each was fully and regularly paid each month during such school year. Such statutory contract was and has been fully executed by each party thereto. Such duly executed contract gave none of the eight petitioning teachers any right, justification nor excuse under the law to maintain this action for a writ of mandate against the Butte School District and its board of trustees, nor to compel the school and its trustees to pay additional sums and amounts under terms of a proposed contract of employment which was offered each of the petitioning teachers, but which each rejected and by which each refused to be bound.

By affirming the action of the trial court the majority opinion herein requires the Butte School District No. 1, and its board

of school trustees to pay to the eight petitioning *tenure teachers* and their attorneys, in addition to the salaries already paid them, around $30,000 under a proposed contract of employment, which such teachers rejected and to which they refused to become a party.

Under the law and under the executed contract which the law gave them as *tenure teachers,* the eight complaining plaintiffs were without right to maintain this action and proceeding or to prevail herein. The trial court's judgment should be reversed.

## ON MOTION FOR REHEARING

Rehearing denied.

## MR. JUSTICES BOTTOMLY and ADAIR:

In our opinion a rehearing should be granted herein. We adhere to our dissenting opinion heretofore filed herein.